## 9143

### SANDERS v. STANDARD WAREHOUSE CO. *ET AL.*

(85 S. E. 900.)

WAREHOUSE RECEIPTS. TITLE TO PROPERTY DEPOSITED. CONFLICTING
CLAIMS.

1. MORTGAGES—APPEAL AND ERROR.—A finding of fact that a mortgage
covered the cotton to be grown on certain lands, designated as
the lands of a reputed owner, made by a referee, and confirmed by
the trial Court, will not be reversed on appeal because of a false
description of its acreage.

1a. APPEAL AND ERROR — REVIEW — FINDINGS — BURDEN OF SHOWING
ERROR.—An appellant has the burden of showing that a finding of
the referee, concurred in by the Circuit Judge, is against the weight
of the evidence.

2. WAREHOUSE RECEIPTS—BONA FIDE PURCHASER.—A *bona fide* pur-
chaser of a negotiable warehouse receipt occupies no better position
than one who should purchase the property described therein from
one in possession. The ultimate question who was the owner of
such property when deposited in the warehouse being open to
inquiry.

2a. WAREHOUSEMEN—WAREHOUSE RECEIPTS—NATURE OF "NEGOTIABLE
INSTRUMENT."—While a warehouse receipt is "negotiable" in the sense
that, as between the warehouseman and successive holders, indorse-
ment and delivery operates to transfer title to the property therein
described if title was in the person to whom it was issued, yet the
true owner cannot be deprived of his property because it has been
deposited in a warehouse by another and the receipt has been nego-
tiated to a third person, the same rule applying in case of liens
where the deposit is made by the true owner.

3. LANDOWNER—TITLE TO CROPS.—The owner of land is not always the
owner of the crops grown thereon; he may permit another to so
use the lands that the crops will belong to him.

3a. HUSBAND AND WIFE—SEPARATE PROPERTY OF WIFE—RIGHT TO.—A
wife may permit her husband to so use her lands that the crops
grown thereon will be held to belong to him.

4. TITLE—NOTICE.—Where parties derive title from different sources,
the question which shall prevail, is one of title, and not dependent
on notice.

5. ESTOPPEL.—One claiming adverse title to property deposited in a
warehouse is not estopped by the recitals of a warehouse receipt
issued to the adverse claimant.

Before MOORE, J., Orangeburg, April, 1914.    Affirmed.

Action by Preston B. Sanders against Standard Warehouse Company, L. S. Dewitt, Mary I. Dewitt and the Bank of Denmark, and the Citizens Exchange Bank.

From a decree in favor of the plaintiff and the defendant Bank of Denmark, the Citizens Exchange Bank appeals.

*Mr. J. Wesley Crum, Jr.,* for appellant, cites: *As to rights of bona fide holder of a negotiable instrument:* 7 Cyc. 944; 91 S. C. 455; 97 S. C. 52; 98 S. C. 220; 78 S. C. 531; *Id.* 269; 28 S. C. 149; 17 S. C. 219; 14 S. C. 142; 12 S. C. 272; 8 S. C. 290. *Record of mortgages by L. S. Dewitt not notice to bank:* 95 S. C. 350; 93 S. C. 254; 39 Cyc. 1721 and 1728; 2 Pom. Eq. Juris., sec. 658. *Estoppel:* Const., art. 17, sec. 9; Civil Code, secs. 3758, 3759, 3760, 3761; 58 S. C. 231; 55 S. C. 28; 21 Cyc. 1441; 6 Enc. of Eq. 842; 2 Pom. Eq. Juris. 1314; 6 Enc. of Ev. 842.

*Messrs. Raysor & Summers,* for Bank of Denmark, respondent, submit: *Warehouse receipts are only quasi negotiable instruments:* 140 Fed. 959; Civil Code, sec. 2590; 4 Cyc. 414; 20 Ky. Law Rep. 725; 30 A. & E. Ency. of L. 57; 88 Ala. 446; 5 Dak. 62; 126 Ala. 194; 28 So. 603; 205 Fed. 568; 162 Ill. App. 562; 40 Cyc. 417, 418; 37 Oregon 483; 82 Am. St. Rep. 771; 50 L. R. A. 235; 101 U. S. 557; 99 Ala. 141. *Appellant had notice:* 61 S. E. 298; *Id.* 300.

*Messrs. Glaze & Herbert,* for plaintiff-respondent, submit: *The wife permitted her husband to use lands and own crops thereon:* 6 S. C. 240; 24 S. C. 273; 52 S. C. 371. *Notice:* 29 Cyc. 1114; 63 Tex. 72; 15 Mo. App. 299. *Findings of fact:* 62 S. C. 36; 91 S. C. 476; 96 S. C. 140.

July 24, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The questions presented by this appeal involve the rights and equities between the plaintiff, the Bank of Denmark and the Citizens Exchange Bank of Denmark, in the funds arising from the sale of sixteen bales of cotton, which was raised, in 1911, on three tracts of land, as follows: Seven bales, on a tract of 125 acres, owned by the Bank of Orangeburg, and rented by it to Mary I. Dewitt; four bales, on an adjoining tract of 35 acres, owned by Mary I. Dewitt; and five bales, on a tract rented from one Robinson by John Gary Dewitt.

L. S. Dewitt is the husband of Mary I. Dewitt, and John Gary Dewitt is their son. L. S. Dewitt formerly owned the tract now owned by the Bank of Orangeburg. It is not stated how or when the bank acquired the title; but it seems that, after the bank acquired the title, Dewitt continued to live on it, renting it from the bank. At least it is stated in the record that he so rented it in 1910, and that he lived on it in 1911.

For reasons not stated, the bank refused to rent it to him in 1911, but rented it to his wife, the agent of the bank telling her that the bank would look to her for payment of the rent. The lease does not appear to have been in writing or recorded.

L. S. Dewitt cultivated and managed it as his own, as he had done before. He made the contracts with the subtenants and share croppers in his own name, and furnished the stock, fertilizers and supplies for making the crops, telling them and others that the crops belonged to him, which, to all outward appearances, was true.

On January 11, 1911, he gave the Bank of Denmark a mortgage on the crops to be grown thereon that year to secure his note for $300 borrowed money. This mortgage was given with the knowledge and consent of Mary I. Dewitt. On February 14, 1911, he gave plaintiff a mortgage on the crops to be grown that year on a tract, described as "containing 125 acres, known as Mrs. L. S. Dewitt's," to

secure his note for $618 for fertilizers and supplies.    On May 10, 1911, he gave plaintiff a mortgage on the crops to be grown that year on 15 acres, known as lands of the Bank of Orangeburg, to secure his note for the additional sum of $102.    These mortgages were all duly recorded and rank according to their date.    There are certain details concerning them in the record which need not be noticed, as they are not material to the issues considered.

On October 2, 1911, the sixteen bales above mentioned were put in the warehouse of the Standard Warehouse Company by John Gary Dewitt, and the receipt therefor was taken in the name of Mary I. Dewitt.    The son told the warehouseman that five bales of the cotton belonged to him and the balance to his mother; but, for convenience and to save bookkeeping, he consented that the receipt for the whole lot should be issued in his mother's name.

On October 3, 1911, L. S. Dewitt took this receipt, which his wife endorsed, and pledged it to the Citizens Exchange Bank, as security to his note for $617.25 loaned him by the bank at that time.    He also endorsed the receipt.

Mary I. Dewitt and John Gary Dewitt released all claims to the cotton on condition of being released from any liability in this case.

The referee to whom the issues were referred concluded that the mortgages to Bank of Denmark and plaintiff had priority—in the order named—over the claim of Citizens Exchange Bank to so much of the fund as arose from the sale of cotton raised on lands of the Bank of Orangeburg, and plaintiff's mortgage for $618 on the cotton raised on land of Mary I. Dewitt had priority over the claim of Citizens Exchange Bank to that cotton and overruled the defense of Citizens Exchange Bank that it was a *bona fide* purchaser of the cotton for value, without notice of the prior mortgages, holding that the facts and circumstances known to the Citizens Exchange Bank, at the time it made the loan and accepted the receipt, were sufficient to put it upon

inquiry as to the ownership of the cotton and the mortgages thereon which, if pursued, would have revealed the truth. The Circuit Court concurred in and confirmed the findings and conclusions of the referee, and, from this judgment, Citizens Exchange Bank appealed.

There are twenty exceptions, but appellant's attorney treated them, in his argument, as raising only four points for decision, and we shall consider these as stated by him.

1. "Mortgage of L. S. Dewitt to plaintiff, bearing date February 14, 1911, was intended to cover crops raised on the Bank of Orangeburg land, and not Mrs. Dewitt's."

This is a question of fact. The burden is, therefore, upon appellant to show that the concurrent finding of the referee and Circuit Judge is against the weight of evidence. The principal fact relied upon by appellant is that the land is described in the mortgage as containing 125 acres, which is the acreage of the tract owned by the Bank of Orangeburg, while the tract owned by Mrs. Dewitt contains only 35 acres. While this is true, the land is also described in the mortgage as a tract "known as Mrs. L. S. Dewitt's." The tract owned by the Bank of Orangeburg could hardly have been "known as Mrs. L. S. Dewitt's," for there is no testimony that it was ever owned by her, nor that it was even known, except by those immediately interested in the transaction, that she had rented it for that year. There is no testimony that the plaintiff knew it. Therefore, the false description of the acreage does not outweigh the more certain description of the name of the owner.

2. "To defeat the rights of a *bona fide* holder for value of a negotiable instrument something more is required than proof of facts and circumstances which merely give rise to suspicion, or which may be sufficient to put a prudent man on inquiry."

Appellant's error is in assuming that a warehouse receipt is a negotiable instrument, such as a negotiable promissory note or bill of exchange, and that the holder thereof is enti-

tled to the same rights and presumptions as the holder of commercial paper. Such a receipt is nego- tiable in the sense that, as between the warehouseman and the successive holders of it, endorsement and delivery of it operates to transfer the title to the property therein described, if the title was in the person to whom it was issued. But certainly the true owner cannot be deprived of his property by the mere fact that it has been deposited in a warehouse by another to whom a receipt therefor has been issued. Nor will the mere fact of such deposit, even by the true owner, disturb existing liens thereon. The purchaser of such a receipt occupies no better position than one who should buy the property described in it from one in posses- sion of it. He gets no better title than the seller has. The ultimate question, then, is: whose cotton was it? The Cir- cuit Court found that it belonged to L. S. Dewitt, except the five bales of John Gary Dewitt, the proceeds of which appel- lant was held to be entitled to.

Appellant errs in assuming that, because part of the cot- ton was raised on land of Mary I. Dewitt, the title thereto was in her. It does not always follow, either in law or in fact, that the owner of land is the owner of crops grown thereon. A wife may permit her husband to so use her lands that the crops grown thereon will be held to belong to him (*Reeder* v. *Flinn,* 6 S. C. 216; *McLure* v. *Lancaster,* 24 S. C. 273; *Martin* v. *Jenkins,* 52 S. C. 371, 29 S. E. 807) ; and this was done in this case.

3. "The mortgages given by L. S. Dewitt to plaintiff and the Bank of Denmark, even though recorded, is not con- structive notice to the Citizens Exchange Bank, because a record is only constructive notice to subsequent purchasers deriving titles from the same grantor."

The principle invoked is not applicable. To be sure, the record of a mortgage given by L. S. Dewitt of the property of Mary I. Dewitt would not be notice to the purchaser of

the latter's property. But plaintiff and Bank of Denmark do not claim under Mary I. Dewitt. They claim under L. S. Dewitt, while appellant claims under Mary I. Dewitt. Where parties derive title from different sources, the question is not one of notice, actual or constructive, of the conflicting claims; but it is, who has the title? Appellant's claim is equitable,—by way of estoppel against the owner, but it cannot prevail over the legal title previously acquired from the true owner.

4. "Plaintiff and the Bank of Denmark, defendant, are estopped to claim the cotton stored in the warehouse as against the defendant, Citizens Exchange Bank."

This contention is based upon the assumption that Mary I. Dewitt was the owner of the cotton, which has already been disposed of.

Judgment affirmed.