## 9180

### SOUTHERN ENGINE & BOILER WORKS v. DICKS.

#### (86 S. E. 18.)

APPEAL AND ERROR.   PLEADINGS.   AMENDMENTS.   ESTOPPEL.   SALE.
BREACH OF WARRANTY.   EVIDENCE.   COUNTERCLAIM.

1. APPEAL AND ERROR.—On an appeal in chancery it is incumbent on the appellant to show that a finding of fact concurred in by the master and trial Judge is erroneous.

2. PLEADINGS—AMENDMENTS—MASTER.—A master to whom a cause is referred to try all issues, may, during the reference, in his discretion allow an amendment to the pleadings, which does not materially change the claim or defense or result in prejudice to the adverse party.

3. PLEADINGS—AMENDMENTS.—A party resisting a motion to amend must show by affidavit or otherwise to the satisfaction of the Court that he would be thereby misled or surprised to his prejudice.

4. PLEADING—EVIDENCE—ESTOPPEL.—It is unnecessary to plead an estoppel *in pais* in order to allow introduction of testimony showing same.

5. SALE — BREACH OF WARRANTY — COUNTERCLAIM. — Damages arising from breach of warranty on a sale may be set up as counterclaim in an action on notes for recovery of the purchase money.

Before SEASE, J., Barnwell, March, 1914.   Affirmed.

Action by Southern Engine & Boiler Works against W. A. Dicks. From judgment for defendant, plaintiff appeals. The facts are stated in the report of H. L. O'Bannon, Esq., master, as follows:

"The undersigned master, to whom the above entitled action was referred by order of the Honorable Robert E. Copes, presiding Judge, at the March term, 1912, to take the testimony and report his conclusions of both law and fact, with leave to report any special matter, begs leave to report:

---

FOOTNOTE.—As to necessity and sufficiency of compliance with the conditions of warranty in sale of personal property, see note in 50 L. R. A. (N. S.) 783, and as to waiver of such conditions, see further note, *Ib.*, 796 *et seq.*; and 36 L. R. A. (N. S.) 469.

That he has held several references, when he was attended by counsel, and has taken the testimony as stated in the minutes of reference hereto attached, and filed herewith.

The action was brought upon a note given for the purchase money of an engine and boiler sold by plaintiff to defendant. The defendant by his answer alleged facts which go to show a failure of consideration, or breach of warranty as to the goods sold, and a counterclaim for damages arising out of such breach of warranty.

From the evidence in the case, I find as matters of fact: That at Dunbarton, S. C., on or about 1st June, 1909, defendant entered into a written contract (Exhibit 'A' attached to plaintiff's depositions) for the purchase from plaintiff, through its agent, R. L. Matthews, of Columbia, S. C., of an engine and boiler, for the purpose, as said agent then knew, of operating a cotton ginning outfit which defendant on the same day purchased from the Lummus Company, to be installed in time for, and operated during, the ensuing cotton ginning season. The written contract between plaintiff and defendant called for the delivery of the engine and boiler f. o. b. cars of the M. & O. R. R. Co., at Jackson, Tenn., of the factory where they were made, on or about July 1, 1909, or as soon thereafter as practicable, for shipment at Dunbarton, S. C. The defendant bound himself to pay plaintiff $812 as the purchase money for said engine and boiler, in three instalments, as follows:

Cash on delivery.................................$272
One note, due November 1, 1909.................. 270
One note, due November 1, 1910.................. 270
                                                 ----
   Total .......................................$812

The notes to bear interest at the rate of 8 per cent. per annum from date of shipment until paid. This action is brought upon the third note.

The written contract between the parties contained the following express warranty, to wit:

'The Southern Engine and Boiler Works guarantees said machinery and property shall be as represented herein, and of good material and workmanship—to do good work when properly set down and operated. And the party of the second part,' referring to defendant, 'agrees to test the same within thirty days after received. And if, upon trial, said machinery should not prove as herein represented, the party of the second part agrees to give immediate written notice to the said Southern Engine and Boiler Works, of Jackson, Tenn., and to allow the company a reasonable length of time, after receiving said written notice, to send a man to adjust said machinery, the purchaser agreeing, at the time, to give full co-operation together with necessary help. The use of said machinery, without giving the written notice as herein provided, shall be deemed and construed an acceptance of the same and conclusive evidence that said property is as herein represented.' Plaintiff shipped the engine and boiler on 23d June, 1909. They arrived at Dunbarton on July 2, 1909, and were delivered to, and received by, defendant on the next day, July 3, 1909. I find from the circumstances disclosed in the testimony, that defendant paid the cash instalment of purchase money, and gave notes for the other two, as stipulated in the written contract. The first due has been paid; and this action is brought to enforce the payment of the second note, due November 1, 1910.

When the engine arrived and was received by defendant, the ginning season had not opened, and the ginhouse and plant, in connection with which the engine and boiler, as plaintiff knew at the time of the making of the contract, was to be used, had not been, and could not within thirty days from that time be, completed. Defendant had the engine and boiler installed, erected, and properly put down in the ginhouse by W. H. Summerall, a competent machinist with sixteen years' experience in such work. The ginhouse

and plant were completed about August 1, 1909, and soon thereafter defendant obtained enough seed cotton which had been kept over from the last year's crop to make one bale, and used it in testing the machinery.   But he had no further opportunity to test the machinery, and the character of the work done by it, until about August 27, 1909, when the ginning season for that year commenced in the vicinity of the ginning plant.

When the engine had been installed, with the accompanying machinery of the gin, the boiler was fired up, and everything seemed to run smoothly for awhile; then it slowed down; the center crank, where the piston fastens to the main shaft, was found to be hot, the engine ceased to run properly, and the gin had to be stopped before the first bale of cotton was ginned.

The failure of the engine to do good work was due to defects in its original construction.   The center hole was not bored true; the crank was turned a little to one side; the bottom slide, which is a part of the bed of the engine, was not properly dressed; one side of the crosshead was higher than the other; the driving wheel ran with a wobble; the driving rod was not in line with the driving shaft, causing the driving rod to twist to one side as the slide went out, and a pressure on the center brass on one side and on the crank shaft brass on the opposite side; the cylinder and crosshead were not in line with the crank shaft, and with each stroke made by the engine both brasses became unduly heated.   Because of these defects in the building of the engine and the assembling of its parts in the factory it failed, when tested, to do good work.   In order to remedy these defects the engine would have to have been carried to a machine shop, the bottom slide properly dressed down, and leveled up from the foundation, and the engine rebuilt.

The defendant continued to use, and test, the engine, without giving plaintiff any notice of its failure to do good

work, until September 16, 1909, when he wrote plaintiff as follows:

'The engine I bought of you is giving me a great deal of trouble. It runs hot all the time. Seems to be in the crank, brasses and shaft, also the smaller pulley on the crank, brasses and shaft, also the small pulley on the side. * * * Nothing I can do will make it run. It is a very busy time in the ginning business, and I am at a considerable loss every day I am stopped. Please advise me what to do as I am stopped, and can't use the engine at all.'

Upon receipt of this letter, plaintiff, on September 21, 1909, shipped to defendant another pair of brasses, and adjusting wedge with two screws for tightening up the brasses, and compression grease cup, and five pounds of grease, with directions to put in the new brasses, file the wrist pin, and change the pulley. Plaintiff stated that if those directions were carried out the trouble in the operation of the engine would be corrected.

On October 2, 1909, plaintiff sent defendant a bill for the new brasses, wedge, cup, etc., asking the return of the old, saying: 'We presume you followed our instructions in applying the compression grease, and if so, we are sure you are getting along all right. * * * If there is any further assistance we can give you in this connection, kindly advise.'

About October 12, 1909, defendant notified plaintiff that the engine still failed to do good work.

On October 16, 1909, plaintiff replied to defendant: 'We feel pretty sure that you have not had a competent man to look after the erection and starting of this engine. * * * We tested the engine before shipment, and know that it is all right, or was all right when it left here. You understand we did not contract to erect the engine and operate it for you, and all we could do was to test the engine before shipment, and see that it left here in first-class condition.'

On October 20, 1909, plaintiff again wrote defendant that the failure of the engine to do good work was due to the negligence of incompetency of defendant's engineer.

On February 9, 1910, plaintiff wrote defendant that 'There is no evidence from these brasses' (which had been returned it by defendant) 'that there was anything improper about the manufacture of the engine or brasses.'

On April 9, 1910, plaintiff again wrote defendant in answer to a renewal of his complaint about the engine, to 'Remove the pulley he complained about, and ship it to us (them) by freight. We will inspect it on arrival here, and if there is the least thing wrong with the pulley, we will replace it for you free of charge, and also pay the freight on the one to replace it,' etc.

Defendant thereupon sent them the pulley. But the defects in the engine remained, and it would not work properly.

About 22d September, 1910, defendant notified plaintiff that he would have to discard the engine in question, and get another. To this plaintiff replied as follows:

'We have received your telegram of the 22d, and the matter has been delayed on account of the absence of the writer. We do not understand from this night letter, or night telegram, what you want, or what is the matter with the machinery. You understand that we do not propose to operate this machinery for you and we do not propose to keep it in repair. If you will let us know what is the matter with it, and what you want, we will look into it, and try to advise you and help you out. We must first know in detail what you want, and what the machinery needs before we could do anything for you. You understand that we are ready to do anything that we can, or that it is our duty to do, but the machinery will not run unless it is properly handled, and that is your part and we expect you to do this. We will be glad for you to write us fully about it.'

After defendant notified plaintiff by letter of September 16, 1909, of the failure of the engine to do good work, he was forced during the remainder of that month and October, the height of the ginning season, to shut down, and stop his gin for sixteen days; and he thereby lost the ginning of an average of twenty bales of cotton for each of said days, for which he would have received a dollar and a half a bale. The expense of operation of the gin during that time would have been about seven dollars per day, so that the defendant lost two hundred dollars because of the failure of the engine to do good work on those days.    He had been induced to continue his efforts to operate the gin with this engine during the season of 1909 by the direction of the plaintiff to try it with other brasses, changing the pulley, etc., all of which directions he faithfully followed. The engineer and machinist employed by defendant to install and operate, and attempt to remedy the defects in the operation of the engine, were thoroughly competent and reliable men; and defendant had allowed the plaintiff more than a reasonable time, after calling its attention to the failure of the engine to do good work, on September 16, 1909, and repeatedly thereafter, to send a man to adjust the machinery, and remedy the defects in it.    But plaintiff did not choose to send a man to attend to the matter for them, and insisted that the failure of the engine to perform good work, was (after defendant had tried the remedies and changes suggested by it) due to the negligence or incompetence of defendant's engineer. So, upon receiving plaintiff's letter in reply to the telegram of the 22d, defendant discarded the engine and boiler, sold by plaintiff, for the reason that it could not be made to do good work, and incurred the expense of buying and installing another.

On January 11, 1911, this action was commenced, the defendant having refused to pay the note sued upon, which became due, under the terms of the contract on November 1, 1910.

I will now state my conclusions of law :

'Whether time is of the essence of a contract is ordinarily to be determined by the construction of the contract in the light of the settled principles of law upon that subject.   As in all other questions of construction, the intention of the parties should prevail, and it should be ascertained, if it can be, from the language which they have used, which may be read in the light of the character and purpose of the contract and the facts and circumstances under which· it was made, and the construction put upon it by the parties themselves.'   *City of Chester* v. *National Surety Co.,* 91 S. C. 20, 74 S. E. 37.   The contract of warranty in evidence clearly contemplated that the purchaser should test the machinery by use, for a period of thirty days, and if he should continue to use the machinery after that length of time, without written notice of a breach of the warranty that it was as represented, and of good material and workmanship and do good work when properly set down and operated, then such use should be deemed and construed an acceptance of the same and conclusive evidence that the machinery was as represented.   The contract in words states that this test by use, should be made within thirty days after the machinery was received by the purchaser.   But the facts and circumstances under which the written contract was signed, show that the parties contemplated the use of the engine and boiler in the operation of a ginning plant, not then erected, but to be erected in time for the ensuing cotton ginning season, and the test contemplated could not be made until the ginning plant should be erected and the commencement of such ginning season.   Hence, I conclude that under the· facts and circumstances in this case the thirty days' period within which the purchaser was to test this engine and boiler by use began, when the purchaser first had an opportunity to use it, August 27, 1909, the commencement of the ginning season in the vicinity of the plant.   This construction is, I think, consistent with the reasonable rule

announced in *Paint Co.* v. *Bennett-Hedgepath Co.,* 85 S. C. 494, 67 S. E. 738; *Birdseye* v. *Davis,* 13 S. C. L. (2 McC. L.) 296, 35 Cyc. 424; *Manufacturing Co.* v. *Casualty Co.,* 78 S. C. 80, 58 S. E. 969, cited by defendant's counsel.

I, therefore, conclude that the letter of September 16, 1909, from defendant to plaintiff, was sufficient notice of the defects in, and failure of, the engine to do good work, to satisfy the requirements of the contract between the parties, and to afford a basis for the claim of failure of consideration and breach of warranty, inasmuch as the plaintiff did not choose to avail itself of its privilege to send, within a reasonable length of time, after receiving said letter, a man to adjust the machinery and remedy the defects that existed in its material, workmanship and construction. I further conclude that, if I am in error in holding that the notice contained in the letter of September 16, 1909, was within the thirty day period contemplated by the parties to the contract, the retention of that letter, and the consideration of the defendant's claim that the engine would not do the work contemplated, and the directions how the alleged defects were to be remedied, without any notice that the time limit to plaintiff's liability under its warranty would be relied upon, show a waiver by the plaintiff of the requirement that the notice of breach of warranty be given within thirty days; as does also plaintiff's conduct, after receiving this and subsequent letters, in requiring and directing the defendant to incur trouble and expense in attempting to make the engine do good work as warranted, in that such conduct was inconsistent with the claim that plaintiff had been discharged from liability under its warranty, by reason of the failure of the defendant to give notice of the breach within thirty days after receiving the engine. *Hayes* v. *Tel. Co.,* 70 S. C. 23, 48 S. E. 608; *Gilliland* v. *Ry. Co.,* 85 S. C. 35, 67 S. E. 20; *Huber Mfg. Co.* v. *Bleasing,* — Ind. App. —, 99 N. E. 133. See, also, *Advance Thresher Co.* v. *Vinckel,* 121 N. W. 431, 84 Neb. 429; *First Natl. Bank* v. *Durcher,* 128

Iowa 413, 104 N. W. 497, I. L. R. A. (N. S.) 142, and *Nichols* v. *Wideman,* 72 Minn. 344, 75 N. W. 204, cited by defendant's counsel.

Counsel for plaintiff raised the objection that waiver of the time limit within which notice of breach of warranty was to be given was not plead.

Counsel for defendant then asked leave to amend his counterclaim. Counsel for plaintiff objected to the amendment, stating the notice of motion was insufficient. I asked in what respect? Counsel declined to specify the objection, or state its grounds. I, therefore, conclude that the amendment asked for should be allowed.

The answer sufficiently plead the defense of failure of consideration. *Duckworth* v. *McKinney,* 58 S. C. 426, 427, 36 S. E. 760. The facts there stated also show the breach of warranty on the part of the plaintiff.

I do not think it was necessary, to let in evidence to support the defense, that defendant should have plead the estoppel *in pais* of the plaintiff to raise the objection that notice was not given it of the breach of warranty within thirty days after the engine was received. *Scarborough* v. *Woodley,* 81 S. C. 332, 62 S. E. 405.

The case of *Griffith* v. *Newell,* 69 S. C. 300, 303, 48 S. E. 259, as to the necessity of pleading waiver of conditions precedent does not apply to the case at bar. The case of the *W. T. Adams Mac. Co.* v. *Turner,* 50 So. 308, cited by defendant's counsel, tends to the conclusion that the giving of the notice within the thirty days was not a condition precedent to a recovery of damages for breach of warranty, or to sustaining the defense of failure of consideration.

I, therefore, conclude:

That the complaint should be dismissed, and the defendant should have judgment against the plaintiff for one hundred and fifty dollars damages claimed in his counterclaim."

The master's report was confirmed by the Circuit Court for the reasons therein stated, and judgment was given accordingly.

*Mr. Jas. A. Willis,* for appellant, cites: *As to allowance of amendment:* 69 S. C. 300; 21 S. C. 225; 21 S. C. 221; 60 S. C. 485.   *Waiver:* 63 S. C. 188; 76 S. C. 573; 56 S. C. 507; 42 S. C. 351; 54 S. C. 375; 70 S. C. 23.

*Mr. R. C. Holman,* for respondent, cites: *As to notice of defects in reasonable time:* 35 Cyc. 424; 80 S. C. 154; 78 S. C. 79, 80; 99 S. C. 32; 93 S. C. 40.   *Not necessary to plead estoppel:* 81 S. C. 332.   *Waiver as to time of notice of defects:* 120 S. W. 391; 128 Iowa 413; 121 N. W. 431; 84 Neb. 429.

August 25, 1915.

The opinion of the Court was delivered by Mr. Justice Watts.

This is an appeal from an order of Judge Sease confirming the report of the master of Barnwell county; to whom all issues of law and fact were referred to hear and determine the same and report to the Court.

The exceptions, twelve in number, allege error in finding of facts on the part of the master, concurred in by the trial Judge, and errors of law in permitting amendments; and holding that it was not necessary for the defendant to plead waiver or estoppel *in pais* of plaintiff, to raise objection that notice was not given as required by contract; and in holding that the plaintiff had waived the requirement that the notice of breach of warranty be given within thirty days, and in giving judgment for defendant against plaintiff for $150 on counterclaim.   There was a concurring finding of facts by the master and Circuit Judge, and it is incumbent upon the appellant to show this Court that such

finding was erroneous, and this appellant has failed to do. The master had the power to allow the amendment, it was within his discretion and could be allowed, even during the trial when it does not materially change the claim or defense so as to result in prejudice to the adverse party; and the party resisting the motion to amend must show by affidavit or otherwise to the satisfaction of the Court that he would be misled or surprised thereby to his prejudice. *Koennecke* v. *Seaboard Air Line Railway,* 101 S. C. 86, 85 S. E. 374. As to the admission of evidence under the pleadings the authorities cited by the master in his report sustain his conclusions fully. There was sufficient evidence to sustain his findings as to the counterclaim, and under the authority of the *Williamson Heater Co.* v. *The Paxville School District No. 19 et al.,* 102 S. C. 293, 86 S. E. —, such a recommendation was proper.

All exceptions are overruled. Judgment affirmed.