## 12370

### ELLIS v. JOHNSON *ET AL.*

(141 S. E., 564)

1. APPEAL AND ERROR—MASTER'S FACT FINDINGS, APPROVED BY CIRCUIT JUDGE, WILL BE SUSTAINED ON APPEAL, UNLESS AGAINST CLEAR PREPONDERANCE OF EVIDENCE.—Findings of fact by Master, concurred in by the Circuit Judge, will be sustained by the Supreme Court on appeal, unless they are shown to be against the clear preponderance of the evidence.

2. DEEDS—EVIDENCE HELD TO SHOW THAT DEED WAS PROCURED BY FRAUD.—In action to cancel deed executed by plaintiff conveying her inherited interest in property originally owned by her father's first wife to first wife's daughter, who owned remaining interest therein, evidence *held* to show that execution of deed was procured by false representations of grantee's husband, in whose hon-

NOTE: Failure to read contract as affecting right to relief on the ground of fraud, see annotation in 6 L. R. A. (N. S.), 463; L. R. A., 1917-F, 637; 6 R. C. L., 632, et seq.; 2 R. C. L. Supp., 169; 6 R. C. L. Supp., 401.

esty plaintiff had confidence, that plaintiff had no interest in the property, and that his subsequent execution of deed conveying worthless land to plaintiff as alleged consideration for her deed was merely to make transaction appear *bona fide*, entitling plaintiff to cancellation of the deed.

3. CONTRACTS—ONE SIGNING CONTRACT IN IGNORANCE OF ITS CONTENTS, AND WITHOUT READING IT, MAY AVOID CONTRACT, IF ITS EXECUTION WAS INDUCED BY FRAUD.—Though it is the duty of a person to read his contracts before signing them, and, if he cannot read, to get some one to read them for him, if one who signs the contract in ignorance of its contents, without reading it or having it read to him, is induced to sign by conduct of the other party which amounts to actionable fraud, he may avoid the contract as against him on the ground of fraud.

4. DEEDS—PLAINTIFF HELD ENTITLED TO CANCELLATION OF HER DEED FOR FRAUDULENT REPRESENTATIONS INDUCING EXECUTION, NOTWITHSTANDING SHE DID NOT READ INSTRUMENT.—Where plaintiff was induced by her half-sister's husband, in whom she reposed confidence, to execute deed conveying her interest in property to her half-sister, by representations that the husband needed her signature to the "paper" to enable him to borrow money on the land, without disclosing nature of paper to plaintiff, plaintiff was entitled to have deed canceled for fraud, notwithstanding she did not read deed, though able to do so.

5. ESTOPPEL—DECEASED MORTGAGOR'S SECOND WIFE, WHO, BY ABANDONING MORTGAGED PROPERTY, INDUCED MORTGAGOR'S DAUGHTER TO PAY MORTGAGE AND TAKE POSSESSION FOR 19 YEARS, AND MAKE IMPROVEMENTS, HELD ESTOPPED FROM ASSERTING TITLE, AND HER DAUGHTER WAS LIKEWISE ESTOPPED.—Where deceased mortgagor's second wife, P., refused to pay mortgage debt when foreclosure papers were served on her by holder of mortgage, and thereby induced mortgagor's daughter, by his first wife, to pay the debt and take possession, which she retained for 19 years, during which period she made improvements on property believing that she owned it, P. was estopped to thereafter claim any interest in property, and her daughter, having no greater right therein, was likewise estopped.

6. PLEADING—MOTION TO AMEND ANSWER TO SET UP ADDITIONAL DEFENSES DURING TRIAL WAS ADDRESSED TO TRIAL COURT'S DISCRETION.—Motion to amend answer to set up additional defenses during trial of the case was addressed to trial Court's discretion.

7. APPEAL AND ERROR—ALLOWING AMENDMENT TO ANSWER, SETTING UP ADDITIONAL DEFENSE, IF ERROR, WAS HARMLESS, WHERE DE-

FENSE WAS REJECTED BY FINDINGS.—Allowance of motion to amend answer during trial to set up additional defense, which defense was rejected by Master's findings, concurred in by Circuit Judge, if error, was harmless.

Before DENNIS, J., Darlington, July, 1926. Modified and remanded.

Action by Mary J. Ellis against Ellen Johnson and husband. Judgment for defendants, and plaintiff appeals.

*Messrs. Miller, Lawson & Stokes,* for appellant, cite: *Amendment allowed only when in furtherance of justice:* 111 S. C., 376. *No proof of ouster here:* 128 S. C., 404; 125 S. C., 82; 80 S. C., 114; 71 S. C., 518; 61 S. C., 288; 88 S. C., 191; 48 S. C., 28; 48 S. C., 472; 26 S. C., 248; 1 Strob., Eq., 393; 2 Hill's Eq., 511. *As to sufficiency of evidence to support ouster:* 13 Rich., 59; 3 Strob., 498. *General principle between co-tenants as to ouster and disseizin:* 7 R. C. L., 844. *"Adverse possession":* 1 A. & E. Enc. L. (2nd Ed.), 795; 1 R. C. L., 742; Sec. 320, Code Proc.; 80 S. C., 112; 71 S. C., 330; Dudley, 77; 129 S. C., 315. *Cases distinguished:* 62 S. C., 194; 45 S. C., 318. *Equity will give relief on written contract in presence of fraud:* 79 S. C., 15; 130 S. C., 265; 28 L. R. A., 478; 30 L. R. A. (N. S.), 748; 21 S. C., 226; 2 Strob., Eq., 148; 6 Pom., Eq., Sec. 676; 28 L. R. A. (N. S.), 927; 34 Cyc., 920; 33 Am. Rep., 617; 136 S. C., 496; 111 S. C., 37. *Cases distinguished:* 124 S. C., 211; 131 S. C., 12. *Rights of parties to betterments:* 24 S. C., 264; 26 S. C., 39; 53 S. C., 353; 21 S. C., 592; 71 S. C., 127.

*Messrs. Dargan & Paulling,* for respondents, cite: *Amendment properly allowed here:* 84 S. C., 267; 101 S. C., 462; 117 S. E., 807. *Concurrent findings of fact by Master and Circuit Judge not disturbed unless manifestly contrary to preponderance of evidence:* 121 S. E., 674; 112 S. E., 330; 138 S. E., 815. *"Fraud":* 87 S. C., 339; 21 S. C., 226; 124 S. C., 211; 131 S. C., 12. *Section 708*

*Code Procedure prohibiting admission of hearsay evidence not applicable here:* 47 S. C., 488; Jones on Evidence (2nd Ed.), Sec. 239; 22 C. J., Sec. 418; 115 S. E., 764; 53 S. C., 24; 30 S. C., 284. *Betterments:* 117 S. C., 409; 109 S. C., 451; 102 S. C., 465; 91 S. C., 7; 82 S. C., 358; 81 S. C., 282; 53 S. C., 350; 17 S. C., 395; 26 S. C., 497; 24 S. C., 255; 15 S. C., 337. *Statutory provisions as to betterments not applicable to an action for partition:* 102 S. C., 465; 58 S. C., 544; 28 S. C., 562. *Tenant in common not chargeable for rents and profits derived from improvements made by himself while holding under mistaken belief and reasonably, that he had fee-simple title in severalty:* 24 S. C., 257; 2 McC., Ch., 317; 15 S. C., 368; 26 S. C., 499; 7 R. C. L., 835, Sec. 30; 52 A. S. R., 924.

February 7, 1928.

The opinion of the Court was delivered by Mr. Justice Stabler.

More than 30 years ago one Sally Johnson owned in fee a tract of land of about 180 acres (which since has become very valuable), near the Town of Hartsville. At her death (the date of which is not given), she left as her sole heirs at law her husband, W. G. Johnson, and her two daughters, each of whom took a one-third undivided interest in these lands. The defendant, Ellen Johnson, was one of the daughters. W. G. Johnson, in 1893, to secure a loan of $250.00 made him by one A. M. McNair, mortgaged his one-third interest. After the death of Sally, he married Polly Johnson. They had one child, the plaintiff in this case, who was born in 1897. At his death in 1898 Johnson left as his heirs his widow, Polly Johnson, and his three daughters.

Polly Johnson, shortly after the death of her husband, went, with her little daughter, Mary, to live with near relatives. In 1918 she died, having never returned to live at the old home. Ellen Johnson was married twice, the first

time to Shelton Johnson, and, after his death, to the defendant, Joe W. Johnson. Her sister of the whole blood intermarried with one J. Dwight Byrd. Mrs. Byrd's interest in the lands was at some time acquired by her sister Ellen. After her mother's death, the plaintiff went back and lived several years at the old place with the defendants, until she married Ellis, now her husband.

On November 5, 1924. after the plaintiff had married and moved to her own home, she executed, at the instance and request of the defendant, Joe W. Johnson, as agent for his wife, Ellen Johnson, a deed conveying all her interest in the land to Ellen. On November 24, 1924, she brought this action to set aside and cancel the deed, for partition of the land described therein, and for an accounting for rents and profits.

She alleged the death of her father and the subsequent death of her mother, and that she, the plaintiff, as an heir of her father, took a two twenty-sevenths undivided interest in the said lands, and, as the sole heir of her mother, took a three twenty-sevenths undivided interest therein, making a total five twenty-sevenths interest in fee of which she was seized and possessed as a tenant in common with her half-sister, Ellen Johnson, and that the defendants had received and enjoyed the rents and profits from the said lands for several years. She asked for an accounting for the rents and profits, and, if such accounting could not be had in this case, then for such rental value of the lands as she might be entitled to. She also pleaded that the deed executed by her, of date November 5, 1924, was procured from her by the defendant, Joe W. Johnson. acting for his co-defendant, Ellen Johnson, by fraud and false representations, and set forth certain alleged facts in support of such allegation.

By their first answer the defendants admitted that the plaintiff was one of the heirs at law of her father, W. G.

Johnson, and the sole heir at law of her mother, Polly Johnson, and, as such, had inherited from them a five twenty-sevenths undivided interest in the lands described in the complaint, but set up the deed executed by her in favor of Ellen Johnson as a full defense to her claim; and alleged, further, that the defendant, Ellen Johnson, was the absolute owner in fee of all the lands described in the complaint. During the trial of the case, the defendants were allowed to amend their answer; and by their amended answer, in addition to the defense already pleaded, they interposed the defense of adverse possession, and set up a claim for betterments.

The case was referred to the Judge of Probate for Darlington County, acting as Master, who found that the alleged fraudulent deed was good and valid as conveying whatever interest the plaintiff had in the land to her half-sister, Ellen Johnson, and accordingly recommended judgment for the defendants.

The matter was heard before his Honor, Judge Dennis, on exceptions by the plaintiff to the Master's report. Judge Dennis sustained the report in all particulars, holding that the deed which the plaintiff sought to set aside had not been procured from her by fraud, but was good and valid.

From the decree of the Circuit Judge the plaintiff appeals by numerous exceptions. The main and vital questions raised by the appeal may be thus stated:

(1) Was the deed executed by the plaintiff in favor of Ellen Johnson obtained by false and fraudulent representations?

(2) If so, and the plaintiff is entitled to inherit from her father, W. G. Johnson, would she, under the facts of the case, be entitled also to the interest of her mother, Polly Johnson?

After disposing of these questions, we shall briefly advert to certain other matters contained in the appeal.

I. The first question is raised by the appellant's second and sixteenth exceptions. The second exception imputes error to the Circuit Judge in not sustaining the plaintiff's exception to the Master's report; that the Master erred in not holding that the deed in question was without consideration, and fraudulently procured. The sixteenth exception complains of error on the part of the Circuit Judge in not holding that the Master erred in not finding that the evidence supported the plaintiff's allegations of fraud by establishing:

"(a)` Secrecy in and about the execution of the deed; (b) concealment as to the character of the instrument; (c) misrepresentation and deceit as to the consideration thereof, the proffered deed to the Hicks land being an afterthought and without any contract status whatever; (d) attempted coercion in having plaintiff accept a worthless piece of land in lieu of a substantial estate; (e) that the plaintiff, throughout the years, both when she lived with the defendants, before and after, was kept in the dark as to valuable property rights; (f) that the defendant, Mrs. Ellen Johnson, was and is desirous of having the plaintiff enjoy her property rights but she has been prevented from so doing by her codefendant, whose conduct towards the plaintiff was utterly unfair and unscrupulous; and (g) that both the plaintiff and the defendant, Mrs. Ellen Johnson, have been overreached by the procurement of the defendant, Joe W. Johnson, who was and is without any interest whatsoever in the premises."

The Master in his report, after reviewing and commenting upon some of the testimony in the case, says:

"I find that the deed in question was not procured by fraud, is legally valid, and that the plaintiff has not alleged or proved such an equity as entitles her to the cancellation thereof."

These findings of fact by the Master were concurred in by the Circuit Judge, and will be sustained by this Court, unless it is shown that such findings are against the clear preponderance of the evidence. *Miller v. Smith,* 103 S. C., 307; 88 S. E., 354. *McLure v. Goodwin,* 101 S. C., 362; 85 S. E., 900. It becomes necessary, therefore, to examine the testimony in the case pertinent to the issue of fraud.

The record discloses, as has been pointed out, that the appellant, a child of the second wife, was but a few months old when her father died in 1898; that shortly after his death the mother and child went to live with near relatives, and it was there that the appellant lived until she was about grown; that her mother never returned to the old home to live, but that, after the mother's death, the appellant went back and lived for several years with the respondents.

The appellant testified that she had always been told and led to believe by those she had confidence in that she had no interest in her father's estate. The record does not disclose what her mother told her, if anything, about the matter; but she testified positively that the respondents, Johnson and his wife, with whom she lived for a number of years after she reached the age of maturity, told her she had no interest in her father's estate whatever, and that she believed what they said, this being especially true with respect to Johnson himself, whom she says she regarded as a good man; that, being thus led to believe that she had no interest in the property, and having full confidence in the honesty of the respondents, she had no reason to investigate the truth or falsity of the statements made to her by them.

It may be that the respondents at one time honestly believed that Mrs. Ellis had no interest whatever in the land. But in the course of time Joe W. Johnson applied

for a loan on the land, and was told by Mr. J. F. Wilmeth, the lawyer handling the transaction, that such loan could not be had because the claim of Mrs. Ellis was a cloud on the title. Johnson then requested Wilmeth to prepare a deed to be signed by Mrs. Ellis to convey her interest in the land to Mrs. Ellen Johnson. Wilmeth testified that he advised Johnson to drop the matter of the land, and not to take the question up with Mrs. Ellis or any one else, as it possibly would lead to litigation. There is a slight conflict between Wilmeth's testimony and Johnson's in this connection, but Johnson admitted that, when Wilmeth gave him the deed, he told him that such a deed usually brought on a lawsuit. It is clear that at this point, and by these developments, if not before and otherwise, the respondents were apprised of the fact that Mrs. Ellis had some possible claim or equity in the land. If Johnson had desired to do the right thing and to treat Mrs. Ellis with absolute fairness, he should then have gone to her and made a full explanation of the entire matter, and sought to have it settled in a way that would be fair to all parties, especially in view of the kinship and relations of confidence existing among the parties.

Did he do this? On the contrary, he took the deed, which stated a consideration of $5.00 and other valuable consideration, and conveyed to Mrs. Ellen Johnson all the interest that Mrs. Ellis had in the land, both that derived from her father and that coming from her mother, and with two friends as witnesses, one being his own brother, hastened to the home of Mrs. Ellis. Leaving the witnesses in the yard, he went into the house to talk the matter over with Mrs. Ellis. He stated to her that he wanted to borrow some money on the land, and could not do so unless she would sign the "paper," and requested her signature. His statement, as far as it went, was true, but was not the whole and vital truth. He did not disclose to her the na-

ture and effect of the "paper," nor his purpose to strip her of all interest in the property. He makes the weak explanation that he was in such a hurry that he did not take time to explain to her the nature of the instrument.

As Mrs. Ellis had been impressed by Johnson and his wife for years that she had no interest in the property, this action on his part in attempting to secure her signature to a paper so that he might borrow money on the land, with his statement that this could not be done without her signature, naturally caused her to make inquiry of him why it was necessary for her to execute the paper, if she had no interest in the property. To this, she says, he replied: "Well, it has gone so far you can't get anything." There seems to have been at that time a dim suggestion in her mind that she really had some rights in the premises. But the impression that had been made upon her mind through many years could not be changed in a moment, and she says that, without reading the paper, having full confidence in the fairness of her brother-in-law, and thinking she was signing a mortgage, she executed the paper as requested by him.

A suspicious circumstance is seen in Johnson's actions immediately after the execution of the deed, when, alone with his sister-in-law, he asked her not to say anything about the matter until he got through with the transaction. He attempts to explain this by saying that he had reference to the matter of the loan, and not to the execution of the deed by Mrs. Ellis, as he did not want other people to know that he was getting money. This is hardly a satisfactory explanation. We are inclined to think that the real explanation is that he recognized that his actions would not bear scrutiny, and feared that a discussion of them by Mrs. Ellis with her husband and friends would result in defeating his purpose to divest her of her interest in the land.

Another matter is the question of consideration. As stated, the consideration shown in the deed is $5.00 and other valuable consideration. Johnson says that he intended to give Mrs. Ellis, as a part of the consideration, 50 acres of his Hicks place, testified by a number of witnesses to be practically worthless. Mrs. Ellis denies that there was any such arrangement made between her and Johnson. His testimony on this point is confused, but he testified very clearly that he had told her many times that he wanted to give her some of the Hicks land because she had not received anything from her father's estate. These statements were made to her long before he attempted to secure a deed from her conveying her interest to his wife. Some days after the execution of the deed by Mrs. Ellis, and after the *bona fides* of that deed had been questioned, he made a deed in her favor to 50 acres of the Hicks land, and sent it to her, with the consideration therein fixed at $1,250.00. This deed Mrs. Ellis refused to accept. The circumstances surrounding the execution of Johnson's deed to Mrs. Ellis tend to show that he was attempting to force the same on her as a part of the consideration for the deed executed by her, and that he was doing his level best in every way to make the execution of her deed to his wife appear to be a *bona fide* transaction in every respect, with a valuable consideration.

Whether Mrs. Ellis read the paper before signing it 3, 4 was not decided by the Master. The respondents say, however, that Mrs. Ellis could read, and that, even if she failed to read the paper which she executed, she cannot now complain that a fraud was practiced upon her, as there is no evidence that she was coerced or persuaded not to do so. The Master takes the same view, and cites the cases of *Colt Co. v. Freeman,* 124 S. C., 211; 117 S. E., 351. *Harrison v. Southern Railway Co.,* 131 S. C., 12; 127 S. E., 270, to support the position.

It is true, as has been held by this Court, that it is the duty of a person to read his contracts, and that, if he cannot read, he should get some one to read them for him. But in the case of *Colt Co. v. Britt,* 129 S. C., 226; 123 S. E., 845, this Court also said:

"But as recognized in *Baldwin v. Cable Co.* (78 S. C., 419; 59 S. E., 67), *supra,* it is equally well settled that if the party who signs a written contract in ignorance of its contents without reading it or having it read is induced to sign by conduct of the other party which amounts to actionable fraud, this may give the signer the right to avoid the contract as against him on the ground of fraud. 13 C. J., 371, § 250."

Applying this principle to the present case, it is clear that, in the light of all the circumstances, the conduct of the respondents amounted to actionable fraud, such as will give Mrs. Ellis the right to avoid the deed.

In view of all the testimony and circumstances leading up to and culminating in the execution of the deed in question, we are satisfied that the appellant has established by the preponderance of the evidence that she was overreached, misled, and deceived in the execution of the deed, and is entitled to relief by a Court of Equity. We may add that a fair inference from the testimony is that Mrs. Ellen Johnson desired to do the right thing by Mrs. Ellis, but was prevented from doing so by her husband, Joe W. Johnson.

II. Having reached the conclusion, for the reasons stated, that the deed of November 5, 1924, should be set aside and canceled, we will now inquire, as to the second question, whether, under the facts of the case, the appellant is entitled to her mother's three twenty-sevenths interest in the land.

The respondents in their brief say:

"Even if the appellant should be awarded so much of the Hartsville land as she inherited from her father, she would not be entitled to the interest of her mother, Mrs. Polly Johnson, because Mrs. Polly Johnson, being *sui juris,* agreed that Mrs. Ellen Johnson should have the land for the mortgage debt, and surrendered the possession thereof to her exclusively for nineteen years, and Mrs. Ellen Johnson paid the mortgage debt in reliance upon that agreement, by which Mrs. Polly Johnson was estopped, and the plaintiff has no higher right than her mother had."

The Master, in his report, says:

"To the extent that the aforesaid deed affected the interest of the plaintiff's mother, Mrs. Polly Johnson, it should be sustained on the additional ground of equitable estoppel. When Mrs. Johnson renounced her interest in the land and surrendered possession thereof to the defendant, Ellen Johnson, and thereby induced the latter to pay the mortgage debt and improve the land, believing that it was her own, she was estopped from thereafter claiming any interest in the land, and the plaintiff, having no higher right than her ancestor, is likewise estopped. *Chambers v. Bookman,* 67 S. C., 450; 46 S. E., 39. *A. & C. R. Co. v. Victor Mfg. Co.,* 93 S. C., 397; 76 S. E., 1091. In other words, if the plaintiff's mother, Mrs. Polly Johnson, were now living, she could not recover her former interest in the land, and, therefore, the plaintiff, as her heir at law, cannot recover the same.

"When the plaintiff's mother, Mrs. Polly Johnson, declared that the land was not worth the mortgage debt and renounced her interest therein and surrendered possession thereof to the defendant, Ellen Johnson, and thereby induced her to pay the mortgage debt, she should have given Ellen a quitclaim deed. The latter acted upon the assumption that the land was hers, and did so in reliance upon

both the words and acts of Mrs. Polly Johnson. Therefore, equity will treat the title of Mrs. Polly Johnson as vested in Mrs. Ellen Johnson, under the doctrine that equity regards that as done which should be done, and for this reason the plaintiff, as heir at law of Mrs. Polly Johnson, could not recover her interest in the land. *Miller v. Cramer*, 48 S. C., 291; 26 S. E., 657. *Folk v. Brooks,* 91 S. C., 7; 74 S. E., 46. *Walker v. Henderson et al.,* 109 S. C., 160; 95 S. E., 337; 21 C. J., 200."

We think that this contention of the respondents must be sustained. The undisputed testimony is that, at the time the foreclosure papers were served by the holder of the McNair mortgage upon Mrs. Polly Johnson, the mother of the appellant, she stated that she would not pay the debt for the land, and "let them sell it." It is clear that she was willing for the respondent, Ellen Johnson, to pay the debt and take over the land so far as her interest was concerned.

She moved away from the place, leaving it in possession of the respondent, Ellen Johnson, for 19 years, and never afterwards returned, but always spoke of it as belonging to Ellen, clearly indicating that she intended Ellen to own whatever interest she had in the land; and Ellen, so far as Mrs. Polly Johnson was concerned in the matter, had a right to rely upon her statements and actions. Hence, if Mrs. Polly Johnson were living, she would be estopped to claim any interest in the premises as against Mrs. Ellen Johnson; and her daughter, Mrs. Mary Ellis, can enjoy no higher rights than her mother, from whom she takes, would have had, if living.

III. The contention of the appellants that the Circuit Court erred in sustaining the Master's action in allowing the respondents to amend their answer, upon the trial of the case, and set up additional defenses, is without merit. The motion to amend was addressed

to the discretion of the Court, and nothing appears in the record showing that such discretion was abused. *Erskine v. Markham et al.,* 84 S. C., 267; 66 S. E., 286. *Southern Engine & Boiler Works v. Dicks,* 101 S. C., 462; 86 S. E., 18. *Hamer v. David et al.,* 124 S. C., 391; 117 S. E., 807. Further, by their amended answer, the respondents set up the additional defense of title by adverse possession, but, as this was rejected by the findings of the Master, concurred in by the Circuit Judge, the allowance of the motion in that respect, if error, was rendered harmless.

IV. The findings of the Master, concurred in by the Circuit Judge, that the deed executed by the appellant in favor of the respondent, Ellen Johnson, of date November 5, 1924, was valid, and conveyed to Mrs. Johnson whatever interest Mrs. Ellis had in the land, rendered it unnecessary for him to go into the question of rents, profits, and betterments; but, as it is the judgment of this Court that the judgment below should be modified to the extent of granting the appellant's plea that the deed be canceled and set aside, and that appellant is entitled to, and has an interest of, two twenty-sevenths in the whole tract of land described in the complaint, it now becomes necessary that these questions and any other pertinent questions raised by the pleadings and the evidence, be passed upon by the Court below.

The judgment of the Circuit Court, therefore, is modified in the respects named, and the case remanded to that Court for such other proceedings as may be necessary, not inconsistent with the findings herein expressed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.