H. B. TALIAFERRO & CO. v. W. A. SATER & CO.

*Chattel Mortgage—Conflicting Liens—After Acquired Property.*

R., being indebted to H., conveyed to the latter by way of mortgage all the lumber owned by him at his saw-mill and at certain railroad sidings, etc., and also all such lumber as he might thereafter purchase and saw at said mill between the date of the mortgage (March 16, 1890) and August 1, 1891. On April 15, 1891, R. made with one J. a contract whereby the latter agreed to sell him certain timber-trees then standing on certain designated lands. On April 20 thereafter R. and S. formed a copartnership as S. & Co., and, being indebted to T. & Co., conveyed to them by way of mortgage all the lumber owned by them, sawed or unsawed, at their mill, as well as lumber which they owned uncut, and bound themselves to ship to T. & Co. all the lumber they might thereafter saw at their said mill, the proceeds of the sale of the same to be credited on their note which T. & Co. held. The evidence tended to show that what timber was cut on the land of J. was cut by the firm of S. & Co., paid for by them, and hauled by them to the mill which they (and not R. individually) were operating. In an action relating to the lumber cut from the land of J. the Court below instructed the jury that if the lumber in controversy was sawed from timber purchased by R. in his own name for himself before the formation of the firm of S. & Co., and was sawed by S. & Co. at the mill owned and operated by R. at the time of his mortgage to H., the same would be covered by H.'s mortgage, although the timber from which the lumber was sawed was paid for out of the copartnership funds: *Held*, such instruction was erroneous, since, assuming the evidence to be true, the lumber was never subject to the mortgage given by R. to H., because it was not purchased and sawed by R., but by the firm of S. & Co., but was subject to the mortgage of T. & Co., because it was legally and equitably the property of the firm of S. & Co.

CIVIL ACTION, tried at November Term, 1892, of HALIFAX Superior Court, before *Shuford, J.*, and a jury.

The appellees, who are interpleaders in this action, claim the property in dispute under a mortgage made to them on March 16, 1890, by the defendant S. J. Rawls to secure a

debt due from him individually to them.   In that mortgage
the property assigned is described as " all the lumber owned
by said Rawls at his mill now on the land of Mrs. Virginia
Grizzard, in Halifax County, N. C., near the town of Halifax,
both sawed and unsawed, and also all the lumber owned by
him at his siding at the junction of the Wilmington and
Weldon and the Scotland Neck Railroads, said siding being
on the main line, both sawed and unsawed, and all such
lumber as the said Rawls may hereafter purchase and saw
at said mill between the date hereof and the 1st day of
August, 1891."   On April 15, 1891, defendant Rawls made
with one Jackson a contract, by the terms of which Jackson
agreed to sell him certain pine timber-trees then standing
on designated tracts of land, at the price of seventy-five cents
per thousand feet for all trees cut by him, payment to be
made " at the expiration of every four weeks while engaged
in cutting timber on said premises."   And this contract
provided that Rawls should execute a bond in the sum of
three thousand dollars to secure his faithful performance of
its stipulations, and it was further provided that without this
bond the contract should be of no effect.

This bond was not made till the 20th day of April, 1891,
on which date the defendants Rawls and Sater formed the
copartnership of W. A. Sater & Co., and this firm, being
indebted to plaintiffs, executed and delivered the following
instrument:

" Whereas, W. A. Sater and S. T. Rawls, partners as W. A.
Sater & Co., are indebted to H. B. Taliaferro & Co. in the sum
of $576.85 (less amount of freight not charged on bill of said
Taliaferro & Co.), and they desire to secure the same:

" Now, therefore, the said W. A. Sater & Co. do hereby con-
vey to said H. B. Taliaferro & Co. all the lumber now owned
by them, either sawed or unsawed, at their mill on the land

of Mrs. V. S. Grizzard, or at their railroad siding, and all lumber they now own which is uncut.' And the said W. A. Sater & Co. hereby do agree and bind themselves to ship to said H. B. Taliaferro & Co. all the lumber that they may hereafter saw at their said mill, to be sold by them and applied to the payment of said debt until the same is fully paid off, and until all indebtedness hereafter incurred to said Taliaferro & Co. by reason of any advance and supplies they may hereafter furnish said mill are paid in full. And the said W. A. Sater & Co. do hereby give to said H. B. Taliaferro & Co. a lien on the lumber they may hereafter saw at said mill, to secure them for any advances the said Taliaferro & Co. may hereafter make said W. A. Sater & Co. for the running of said mill."  S. T. RAWLS. [SEAL.]

W. A. SATER. [SEAL.]

Witness: S. M. GARY.

This 30th May, 1891.

The following issues were submitted to the jury:

1. Are the plaintiffs the owners and entitled to the possession of the property described in the complaint?

2. Are the defendants Hale Brothers the owners and entitled to the possession of said property, or any part thereof? And if only a part, what part?

3. What was the value of said property at the time of seizure?

4. What amount is now owing on the mortgage debt from S. T. Rawls to Hale Brothers?

The plaintiffs asked the Court to charge the jury—

"That although Rawls may have agreed to buy the lumber in his individual name, if a jury shall believe that it was paid for with partnership funds, it became partnership property if the contract for the purchase was not perfected till after the partnership began."

The Court declined to give this instruction as prayed for, and charged the jury in lieu thereof as adverted to in the opinion of Associate Justice BURWELL.

The plaintiffs also asked the Court to charge the jury—

"That if the jury believe that Hale Brothers took possession of the saw-mill and cut the lumber under the contract of Rawls, then they were mortgagees in possession, and any profits they made must be credited on their debt from Rawls."

The Court gave this instruction *verbatim* as requested, but added that if the jury should find from the evidence that the defendants Hale Brothers took possession of a part of the Jackson timber which was purchased by S. T. Rawls, or any other timber purchased by him, and made a sufficient profit therefrom to discharge the mortgage debt due them by the said Rawls, then the jury should find whether said defendants took possession thereof as mortgagees or not; that if Hale Brothers took possession under the lease from Jackson to Rawls as mortgagees, or under this bond to Andrew T. Jackson to secure themselves against loss thereon, and realized sufficient profit to pay their mortgage debt, the jury should find the fourth issue Nothing. But if Hale Brothers did not take possession of said timber under the said lease from Jackson to Rawls as mortgagees, or under their bond to Jackson to secure themselves against loss, but took possession thereof without regard to the mortgage or bond, and under a separate and distinct contract with Jackson, then what they may have made therefrom cannot be applied to the discharge of the mortgage to them from Rawls, and the jury will find what amount is due them from the evidence.

To this charge as given plaintiffs excepted.

The plaintiffs also asked the Court to charge the jury—

"That the Hale Brothers mortgage does not cover the Jackson contract if the same was made after the partnership began, the contract not going into effect until the bond was given."

The Court declined to give this instruction as asked, and charged the jury that the mortgage of Hale Brothers does not cover the Jackson contract, April 15, 1891, if the same was made, before the partnership began, by S. T. Rawls in his own name, for his own benefit, although he may not have executed bond pursuant to said contract until after his copartnership with W. A. Sater, provided he executed said bond on his own responsibility and without making W. A. Sater & Co. parties to the same.

To this charge the plaintiffs excepted.

The jury responded, to the first issue, "No"; to the second, "Yes, all of it"; to the third, "$500," and to the fourth, "$286.91."

The plaintiffs moved for a new trial. · Motion overruled, and plaintiffs excepted, and after judgment for Hale Brothers the plaintiffs appealed.

*Messrs. R. O. Burton* and *E. L. Travis,* for plaintiffs (appellants).

*Messrs. T. N. Hill* and *W. H. Day,* for defendants.

BURWELL, J. (after stating the main facts): In the argument before us, no question was made as to the validity of the mortgages described in the pleadings, nor is it necessary for us to pass upon them, as the case is now presented to us.

The mill spoken of in this latter instrument was the mill of Rawls mentioned in his mortgage to the interpleaders heretofore set out, and it was operated by the firm of Sater & Co. during the existence of the copartnership.

The mortgage made by Rawls to Hale Brothers did not at all affect the right that he acquired by his contract with Jackson to cut timber on the latter's land. It put no lien on that timber or on his right to cut it. If he had himself caused any of that timber to be cut, and had himself caused the logs to be carried to the mill and to be sawed into lumber, that lumber and any unsawed logs, being his individual

property and answering to the description contained in the mortgage, would be liable for his individual debt to the interpleaders, Hale Brothers. But the evidence on the trial tended to show that what timber was cut on the Jackson land was cut, not by Rawls, but by the firm who paid Jackson for the trees, hauled them to the mill which the firm, not Rawls, was operating, and there the logs were sawed into lumber, not by Rawls, but by the firm who paid all the expenses of converting the standing timber, upon which the interpleaders, as we have said, had no lien, into lumber at the mill.

If these facts are true, it seems that the property in dispute—the lumber at this mill—was never subject to the mortgage given by Rawls to the interpleaders, because it was not purchased and sawed by him, and that it is subject to plaintiffs' mortgage because it is both legally and equitably the property of the firm of Sater & Co.

We therefore hold that his Honor erred when he charged the jury "that if they found from the evidence that the lumber in controversy was sawed from timber purchased by Rawls in his own name for himself, before the formation of his copartnership with W. A. Sater, and was sawed by the mill owned and operated by said Rawls at the time of the execution of the mortgage by him to Hale Brothers, after the date of said mortgage and before August 1, 1891, whether the same was sawed by Rawls alone or by him and Sater as partners, the same would be covered by the description of property contained in the mortgage from Rawls to Hale Brothers, and the title passed from him unto Hale Brothers under that clause in their mortgage, conveying all such lumber as said Rawls may hereafter purchase and saw at said mill between the date hereof and the 1st day of August, 1891, and this would be true although the timber from which the lumber was sawed may have been paid for with the copartnership funds of W. A. Sater & Co."

6

If it were true, as the interpleaders seem to insist, that their lien covered the Jackson timber, or rather Rawls's right to take timber from that land, then it would follow, as plaintiffs insist, that whatever clear profit they made out of sawing this timber must be applied on their mortgage debt, for a mortgagee who acquires possession of the mortgaged property must in all cases account for it, and he will not be allowed to say, when called upon to settle, that his possession was not under the mortgage, but will upon the accounting be credited by such sums as he may have properly paid out to perfect his title, to protect his possession or to render the property available for the payment of the mortgage debt. But since we hold that the interpleaders had no mortgage or lien on the Jackson timber, it is of no avail to consider questions concerning the application of profits made by a mortgagee in possession, which are raised by plaintiffs' second exception.

For the error pointed out above there must be a

New Trial.