FURGERSON v. TWISDALE.

(Filed February 21, 1905).

*Chattel Mortgage—Description—Construction of Contract.*

1. A mortgage executed by two defendants (who cultivated a crop together) for guano used exclusively on the joint crop, using the descriptive words "all crops cultivated by us" on designated lands, and directing in the event of sale the payment of "any surplus *to us*," does not convey an individual crop raised by one of the defendants on another part of the same plantation, in which crop the co-defendant had no interest and the mortgagee knew of the individual crop.

2. The intention of parties must be collected from the whole instrument, and the words used are to be understood in their plain and literal meaning; where the meaning is not clear, courts will consider the circumstances under which the contract was made, the subject-matter, the relation of the parties and the object of the agreement, in order to ascertain their intention.

3. When conflicting descriptions are contended for and cannot be reconciled, courts will adopt that construction which best comports with the manifest intention of the parties and the surrounding circumstances of the case at the time the instrument was executed.

ACTION by H. B. Furgerson against James H. Twisdale and J. H. Fenner, heard before *Judge James L. Webb* at November Term, 1904, of the Superior Court of HALIFAX County. From a judgment in favor of plaintiff, the defendant Fenner appealed.

*Albion Dunn* and *Daniel & Green,* for the plaintiff.
*E. L. Travis,* for the defendant.

BROWN, J. This action is brought to recover possession of a lot of peanuts and corn. The facts are embodied in a statement of "agreed facts," the substance of which is as follows: The two defendants cultivated the crop together on the W. E. Fenner plantation during the year 1903. Dur-

ing the same year the defendant J. H. Fenner individually cultivated a crop on another part of the same plantation, in which Twisdale had no interest. The defendants needed guano for their "copartnership crop" and purchased it from the plaintiff and used it·exclusively on the Twisdale .crop. Fenner used none of it for his individual crop. The crops seized in this action are those raised by Fenner exclusively and embrace none of the Twisdale joint crop. Twisdale was a subtenant of his co-defendant on the half-share plan—J. H. Fenner furnishing the land.and team and Twisdale furnishing the labor and guano, the crop raised to be equally divided. The plaintiff had no notice of the terms of the contract between Fenner and Twisdale but knew J. H. Fenner had an individual crop on the same plantation, separate and distinct from the Twisdale crop. To secure the plaintiff for the guano used on the Twisdale crop, the defendants executed a note and crop lien. The descriptive words used in the latter are "all crops cultivated by us this year, 1903, on the lands known as the W. E. Fenner lands and situated in Halifax County, including tobacco, peanuts," .etc. The lien directs the sale of the crop for "payment of the debt and interest and for any surplus *to us.*"

His Honor in the Court below held that the crop lien or mortgage conveyed the Fenner individual crop as well as the Twisdale joint crop and gave judgment against the defendant.

In this we think there is error. The intention of the parties to the crop lien is to be collected from the whole instrument, and the words used are to be understood in their plain and literal meaning. Where the meaning is not clear, in ascertaining it courts will consider the circumstances under which the contract was made, the subject-matter, the relation of the parties and the object of the agreement in order to ascertain the intention of the parties. "Courts will not make

an agreement for the parties but will ascertain what their agreement was, if not by its general purport, then by the literal meaning of its words. Clark on Contracts (2 Ed.), 404; *Roberts v. Bonaparte,* 73 Md., 191, 10 L. R. A., 689. In all written contracts and agreements, the language used is the primary guide to the meaning. But sometimes the language is ambiguous. In such cases the meaning must be derived from the interests and relations of the parties as appearing in the contract. "Wherever the promise is by two or more persons, as where the words 'we promise,' etc., are used, the liability is *prima facie* joint." Clark, *supra,* 415.

The intention of the parties determines both the quantity of estate as well as the property conveyed. The terms and phraseology of description must be interpreted with that view if it can reasonably be done. When conflicting descriptions are contended for and cannot be reconciled, courts will adopt that construction which best comports with the manifest intention of the parties and the circumstances of the case. "The intention must be collected from the surrounding circumstances at the time the mortgage was made and the language of the instrument itself." 20 Am. & Eng. Ency. (2 Ed.), 919, and cases cited.

What were the "surrounding circumstances" when this mortgage was executed? It appears that Twisdale and Fenner were the owners of a joint crop which they were cultivating in copartnership on the W. E. Fenner land, and that J. H. Fenner owned individually another crop on another part of the same plantation. Fertilizers were needed for the joint crop. By the terms of their farming agreement, Twisdale was to furnish them. To enable him to do so, J. H. Fenner, co-owner of the crop they were cultivating together, joined in the execution of this crop mortgage to the plaintiff. All the fertilizers were used by Twisdale on the joint crop and none on the individual crop of Fenner. If it had been

the intention of the mortgagee to include the individual crop of Fenner, knowing as he did that Fenner had a separate crop, it is very likely that he would have used words broad enough to cover it and leave no room for dispute. The words "all crops cultivated by us on the W. E. Fenner land" do not necessarily mean all crops cultivated "by us or either of us." The natural and ordinary meaning and significance of those words would limit the crop conveyed to that crop cultivated by the two defendants jointly. It is not likely that J. H. Fenner intended to mortgage his individual crop for fertilizers which Twisdale himself had contracted to furnish.

But to leave the question almost free from doubt, the plain terms of the mortgage provide for a sale of the crop in default of payment of the debt, and plainly provide that after the debt is paid the mortgagee shall "pay any surplus to us," that is, to Fenner and Twisdale jointly. It is not likely that J. H. Fenner intended to share the surplus from his own individual crop with one who had no interest whatever in it. Yet that is the legal and proper disposition of any surplus from the joint crop remaining after the debt is discharged.

Neither the diligence of counsel nor our own researches have been able to find any very apposite authority in our own reports. The nearest approach to a pertinent case is *Taliaferro v. Sater,* 113 N. C., 76, wherein it is substantially held that "lumber to be sawed by one does not include lumber sawed by that person and another."

We have considered with care the well-prepared brief of counsel for plaintiff as well as the able oral argument of Mr. Dunn, but we are unable to conclude that the mortgage conveys more than the joint crop of Twisdale and Fenner. Let the cause be remanded to the Superior Court of Halifax County, with direction to render a judgment upon the facts agreed in accordance with this opinion.

Reversed.