## 11346

### BREEDIN v. SMITH *ET AL.*

#### (120 S. E., 64)

1. VENDOR AND PURCHASER—WHETHER PURCHASER OF VENDOR'S INTEREST ASSUMED ALL LATTER'S CONTRACTUAL LIABILITIES HELD FOR JURY.—Where plaintiff contracted to purchase realty from owner, and then sold to defendants his interest in the contract by a contract reciting that the entire consideration for the property was $17,500.00, $14,500.00 of which was to be paid to owner and $3,000.00 to plaintiff, whether, in addition to the agreed payment to owner, defendants assumed other contractual liabilities incurred by plaintiff under his contract with owner, such as interest, taxes, paving assessments, and outstanding claim for the use of party walls, etc., *held* for the jury; there being a latent ambiguity.

2. CONTRACTS—CONSTRUCTION OF UNAMBIGUOUS CONTRACT FOR THE COURT.—Where the language used in a written contract is susceptible of only one reasonable signification, the Court should construe it.

3. CONTRACTS—NOTWITHSTANDING CONTRARY INTENT, AGREEMENT ASCERTAINED FROM LANGUAGE EMPLOYED.—An agreement is ascertained from the plain language employed, and accordingly enforced, no matter what the parties may have intended, but the general intent as evidenced by the contract should not be perverted or frustrated.

4. CONTRACTS—MEANING ASCERTAINED FROM EXAMINATION OF ENTIRE INSTRUMENT.—The meaning of words and phrases used in a contract are ascertained from an examination of the entire instrument, as one expression may modify, limit, or illuminate another.

5. CONTRACTS—PRELIMINARY NEGOTIATIONS CONSIDERED, CONTRACT BEING AMBIGUOUS.—Where the construction of the language of a contract, considered alone, is doubtful, it is the Court's duty to inform itself of the surrounding circumstances and to consider the preliminary negotiations, so that the language employed may be given the intended effect.

6. CONTRACTS—CIRCUMSTANCES UNDER WHICH INTERPRETATION SUBMITTED TO JURY STATED.—Where an ambiguity arises, not upon a consideration of the words of an instrument as viewed in them-

selves, but upon those words when applied to the object described, or where a resort to extrinsic facts will remove an ambiguity, the question of interpretation is for the jury.

7. EVIDENCE—WHERE WRITTEN INSTRUMENT AMBIGUOUS, PAROL TESTIMONY OF TRUE MEANING ADMISSIBLE.—Where a written instrument is ambiguous, parol testimony is admissible to show its true meaning.

8. VENDOR AND PURCHASER—EVIDENCE OF MISREPRESENTATIONS AS TO CONTENTS OF CONTRACT, REFERRED TO IN CONTRACT IN ISSUE, ADMISSIBLE.—Though a contract between plaintiff and defendants for the purchase of plaintiff's interest under a contract for the purchase of realty referred to the last-mentioned contract, evidence of fraudulent representations as to the contents of that contract *held* admissible; whether defendants should have known the contents thereof being for the jury.

9. SUBROGATION—PLAINTIFF CLAIMING SUBROGATION MUST ESTABLISH BREACH OF CONTRACT.—Where plaintiff contracted with owner to purchase realty, and then sold his interest under the contract to defendants, until plaintiff establishes that defendants broke their contract he has no claim of subrogation for payments made by him to owner.

10. SUBROGATION—NOT ALLOWED IN FAVOR OF ONE PERFORMING HIS OWN COVENANTS UNDER CONTRACT SOLD BY HIM.—Where plaintiff contracted with owner to purchase realty, and then sold his interest under the contract to defendants, but it did not appear that owner accepted defendants as primary debtors, plaintiff is not entitled to subrogation for payments made by him to owner, as subrogation is not allowed in favor of one paying a debt in performance of his own covenants.

Before W. H. MULLER, SPECIAL JUDGE, Anderson, December, 1922. Reversed and remanded.

Action by C. S. Breedin against Kurtz P. Smith and A. H. Dagnall. From a directed verdict for plaintiff for a reduced amount, both parties appeal.

*Messrs. Quattlebaum & Cochran* and *Greene & Earle,* for defendants, cite: *Parol evidence admissible to explain contract susceptible of more than one inference:* 115 S. E., 312; 286 Fed., 903; 10 L. Ed., 72; 51 L. Ed., 731; 51 L. Ed., 1026. *Measure of assignee's liability under contract between vendor and vendee:* 2 R. C. L., 265, 626; 39 Cyc., 1825; 5 C. J., 976, 977; 121 N. E., 237; 43 S. E., 259; 82 S. E., 459; 30 S. E., 141; 45 L. R. A. (N. S.), 661;

4 Fed., 577. *Party abandoning contract loses right of action thereon:* 39 Cyc., 1353; 29 A. & E. Enc. L. (2d Ed.), 681; 25 R. C. L., 712; 27 R. C. L., 639. *Vendor responsible for fraudulent representation of agent:* 27 R. C. L., 365. *And purchaser may rescind and recover payments:* 27 R. C. L., 379; 39 Cyc., 913, 1693. *Vendor unable to convey cannot sue for purchase price:* 1 Rich. L., 5; 2 Mill, 435; 3 Hill, 268. *Non-assignable contracts:* 127 U. S., 379; 133 U. S., 473; 132 U. S., 634; 43 S. E., 259; 58 N. W., 724; 25 Am. Rep., 9; 258 Fed., 936.

*Messrs. J. Frank Eppes* and *T. H..Munro for plaintiff,* cite: *Subrogation:* 37 Cyc., 371; 2 Speers, Eq., 37; 4 S. C., 301. *Contract set out encumbrances and defendants should have informed themselves as to them:* 91 S. E., 188; 101 S. C., 221. *Subrogation and cancellation of contract were equitable and Judge had right to pass on issues:* 69 S. C., 141; 23 S. C., 1; 80 S. C., 41; 44 S. C., 119.

November 16, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action to recover the sum of $4.500.00, with interest, alleged to be due the plaintiff by defendants under and by virtue of the terms of a contract in writing which will be hereinafter fully set out.

The complaint alleges, in substance, (1) that on January 27, 1920, the plaintiff entered into a written agreement with P. E. Clinkscales, whereby Clinkscales undertook to sell and the plaintiff to buy a certain lot of land in the City of Anderson upon the terms and conditions therein set out; (2) that plaintiff had complied with all the conditions of his said contract with Clinkscales; (3) that on January 31, 1920, the plaintiff entered into a writing with the defendants, whereby, upon the terms and conditions therein set out, he assigned to them all of his right, title, and interest in and to the contract with Clinkscales; (4) that by the terms of their contract with plaintiff the defendants "were

obligated" to make certain payments therein referred to, to wit, $2,500 to Clinkscales and $1,000.00 to plaintiff on February 26, 1920; (5) that on February 26, 1920, when said payments were due, the defendants refused to make same, and thereupon plaintiff paid to Clinkscales the $2,-500.00 that day due under his agreement with said Clinkscales; (6) that defendants were further obligated to pay plaintiff $1,000.00 on January 27, 1921, which they had refused to pay; and (7) that "by reason of their said engagements the defendants are indebted to the plaintiff" in the sum of $3,500.00, with interest from February 26, 1920, and $1,000.00, with interest from January 27, 1921.

By their answer the defendants deny liability generally, and allege facts, which, liberally interpreted, may be held to set up the following defenses: (1) Full compliance with the terms of their contract according to its true meaning and purport; (2) rescission of their contract by them for the wrongful repudiation thereof by the plaintiffs; (3) rescission of the contract by them for fraud of the plaintiff in procuring same, if subject to the construction and interpretation for which plaintiff contends; and (4) a counterclaim for the sum of $1,000.00, the amount paid by them to plaintiff at the time of the execution of the contract.

Upon the trial the Circuit Judge directed a verdict for the plaintiff in the sum of $2,000.00, with interest on $1,000.00 from February 26, 1920, and on $1,000.00 from January 27, 1921. From judgment thereon, the defendants appeal. From the ruling of the trial Court, refusing to direct a verdict for the full amount claimed, and in effect directing a verdict against plaintiff to the extent of $2,-500.00 of the amount claimed, the plaintiff appeals. The respective appeals of the parties will be considered in the order mentioned.

### DEFENDANT'S APPEAL

From defendants' standpoint the essential facts may be thus stated: The plaintiff, Dr. Breedin, on January 27, 1920, entered into a contract with P. E. Clinkscales, the

owner of a lot of land in the business section of the City of Anderson, for the purchase thereof substantially upon the following terms: (1) The payment of a purchase price of $15,500.00, payable, $1,000.00 in cash, $2,500.00 on February 26, 1920, and the balance on January 27, 1921, with interest at 6 per cent. on the deferred payments; (2) the payment by Breedin of all taxes levied subsequent to the year 1919, and all paving or other assessments already levied or to be levied; (3) the assumption by Breedin of all liability for outstanding claim of Mrs. Seligman for the use of a party wall; (4) the conveyance of the premises subject to an outstanding lease to one Yancey, under which lease Yancy had the right to remove all fixtures placed by him on the land; (5) option of the seller, Clinkscales, on failure of Breedin to make the payments or any part thereof within the time limited or to perform any covenant, to terminate the contract, re-enter, and retain all payments made as stipulated damages. Having paid Clinkscales the $1,000.00 in cash as provided by this contract, the plaintiff, Breedin, employed H. M. Holland "to resell" the property he had contracted to purchase; the authority of Holland as agent to expire at 6 p. m., January 31, 1920. Holland talked with the defendant, Smith, on the morning of January 31, "carried him down there and showed him the property." About 2:00 p. m. of this day Smith took his codefendant, Dagnall, to see the lot and reported to him what Mr. Holland had said. Smith and Dagnall then talked further with Holland, and after doing so went to the plaintiff, Breedin's, office and offered him $17,000.00 for the lot. Dr. Breedin declined to take less than $17,500.00, and Smith and Dagnall then agreed to pay that price. They then went to Mr. Dagnall's office to draw the contract; Mr. Holland came in and shortly afterward Dr. Breedin, the plaintiff, came. Breedin then stated that all of the purchase price could not be paid at once, as it would have to be paid as arranged for in his contract with

Clinkscales. Smith and Dagnall agreed to making the payments accordingly. Mr. Smith drew the contract, and the dates of payments were furnished by Holland or Breedin, one of whom had the Clinkscales contract, by reference thereto. At this time the Yancy lease was mentioned, and it was agreed that Smith and Dagnall were to get the rents. Thereupon the contract, giving rise to the present controversy, was drafted and executed about, or a little before, 4:00 p. m. of January 31. The transaction was hurriedly conducted. The defendants testified substantially that the Clinkscales contract was never in their possession, and that, except in the particulars relating to the dates of payments to be made by Dr. Breedin to Clinkscales and to the fact of the Yancey lease, the contents of that contract were wholly unknown to them; that, in the negotiations with the plaintiff's agent, Mr. Holland, the Clinkscales contract was not mentioned; that upon the basis of the representation made to them by Mr. Holland, the plaintiff's agent, they offered $17,500.00 for the property, free from all liens and incumbrances; and that the contract actually entered into merely embodied that offer and its acceptance by the plaintiff.

Several days after the execution of this contract between the plaintiff and the defendants, the defendants learned for the first time through Mr. Clinkscales that by the terms of his contract with Dr. Breedin certain obligations· as to a claim for the use of a party wall, as to taxes and paving assessments, as to interest, and as to removal of fixtures by the tenant, Yancey, had been assumed by Dr. Breedin. Mr. Dagnall, one of the defendants, then saw Dr. Breedin and stated to him that it was the defendants' understanding and construction of their contract, that they were not to assume Breedin's obligation to Clinkscales beyond the payment of $17,500.00 for a free and unincumbered title to the lot. Dr. Breedin stated, in effect, that it was his understanding and construction of their contract that the defendants were to assume all obligations imposed on him by

the Clinkscales contract in addition to making the payments to him and Clinkscales, amounting to $17,500.00, as provided in defendants' contract, and that he would insist on their performance accordingly. On February 26, 1920, the defendants offered in writing to carry out their contract according to their construction thereof and to pay the sum of $3,500.00 that day, payable subject to the acceptance by Dr. Breedin of the defendants' view of the respective obligations of the parties under under the contract. That offer was refused by plaintiff, who, thereupon, paid to Clinkscales the $2,500.00 that day due upon his contract with Clinkscales. In February or March, 1921, Clinkscales exercised his right to terminate the contract between himself and Breedin and reentered into possession of the land. No rents were ever collected by or offered to the defendants, and after their offer of February 26, 1920, they treated the contract as rescinded. At the time of such rescission, or attempted rescission, by the defendants, the land had increased rather than declined in value.

The determination of the question raised by defendants' appeal, as is clearly indicated by the foregoing outline of the evidentiary facts, turns upon the construction and interpretation of the contract in writing entered into between the plaintiff and the defendants. That agreement is as follows:

"Know all men by these presents: That I, C. S. Breedin, hereby sell and transfer unto K. P. Smith and A. H. Dagnall all my right, title and interest to the contract made and entered into between P. E. Clinkscales and myself on the 27th day of January, 1920, to that certain lot situate on South Main Street in the City of Anderson, County and State aforesaid.

"The said K. P. Smith and A. H. Dagnall are to pay the said C. S. Breedin four thousand, five hundred dollars ($4,500.00) on or by February 26, 1920, one thousand

dollars being paid this day receipt of which is hereby acknowledged.

"It is understood that the entire consideration that the said K. P. Smith and A. H. Dagnall are to pay for said property is seventeen thousand, five hundred dollars ($17,500.00); the remaining purchase price to be paid on or by January 27, 1921.

"It is understood that of the four thousand, five hundred dollars ($4,500.00) above mentioned, paid and to be paid on or by February 26, 1920, the said K. P. Smith and A. H. Dagnall are to pay twenty-five hundred dollars of the said amount to P. E. Clinkscales, which is the amount to be paid by C. S. Breedin to P. E. Clinkscales on February 26, 1920, under the terms of the contract between P. E. Clinkscales and C. S. Breedin, and two thousand dollars of this amount is to be paid to C. S. Breedin, making a total of four thousand, five hundred dollars, one thousand of which has been paid.

"It is understood that the rent contract of L. L. Yancey is hereby assigned to K. P. Smith and A. H. Dagnall, and the rents and profits are to be paid to them. Balance due to P. E. Clinkscales, January 27, 1921, $12,000.00, due C. S. Breedin, January 27, 1921, $1,000.00.

"Witness our hands and seals this 31st day of January, 1920.

"C. S. BREEDIN, [Seal.]
"K. P. SMITH [Seal.]
"A. H. DAGNALL, [Seal.]

"In presence of:
 "H. M. Holland."

The Circuit Judge construed the foregoing contract, and thereupon ruled as follows:

"But as I construe this contract, it was a contract entered into by and between Dr. Breedin on the one part and Mr. K. P. Smith and Mr. A. H. Dagnall on the other, under the terms of which Dr. Breedin sold to these defendants his

right, title, and interest in the contract, the reference to the lot of land on Main Street being merely descriptive of the contract being transferred; that, in the first instance, a sum of money of $4,500.00 is dealt with, and then, in order to state what was the entire amount to be paid for the assignment of the contract, it is stated that the entire consideration shall be $17,500.00, which, as I construe it, does not mean to say that the $17,500.00 was to be paid for the property without regard to the contract, but that amount was to be paid for the rights which the plaintiff here had under the contract. The whole transaction, to my mind, seems to show that the defendants were buying the rights of the plaintiff as a speculation, paying him a profit and expecting themselves to make a profit. This being my view of the contract, then they are bound by the provisions in the contract between Dr. Breedin and Mr. Clinkscales, and I have excluded testimony as to representations of facts which were made a part of that contract, for the reason that I felt that the defendants were bound by the contract. I did permit the defendants to attempt to prove misrepresentations with regard to the contents of the contract, but, as I view the testimony, no misrepresentations have been shown. On the contrary, the defendants here are two very reputable members of the Anderson Bar, are gentlemen of unusual intelligence, and I am satisfied that they are bound by the terms of the contract, it reciting that they purchased the Breedin-Clinkscales contract. There is nothing to show that the plaintiff here has in any way tried to mislead them as to the contents. On the question of abandonment, as I view the case, the plaintiff has a right to bring his suit at any time within six years after the breach of the contract. When defendants refused and failed to comply with the terms of the contract, he had a right to treat it as breached and sue for his damages or the loss that he had sustained as a result of such breach. And, such being my view as to the construction of the con-

tract, and as to the testimony admitted in this case, I am forced to the conclusion that there is nothing left for me to do in this case but direct a verdict for the plaintiff for $2,000.00; being the amount left in the complaint after excluding the $2,500.00."

The points made by the exceptions are substantially as follows:

(1) That the trial Court erred in holding that the contract was free from ambiguity, in construing the contract as aforesaid, and in directing a verdict against defendants for the sum of $2,000.00 upon the basis of such erroneous construction.

(2) That, in the view most favorable to plaintiff, the contract was ambiguous and susceptible of more than one interpretation, and that the trial Judge committed prejudicial error in excluding parol testimony offered by defendants to show its true meaning and purport.

(3) That in the view that the construction of the contract adopted by the trial Judge was correct, reversible error was committed in excluding parol testimony offered by defendants to establish that it was procured by fraud.

(4) That, in any view, there was evidence of abandonment of the contract by plaintiff, and that upon that issue the case should have been submitted to the jury.

1-4 As to the first point, we are unable to concur in the view of the learned Circuit Judge that the contract was so plain and unambiguous as to justify the construction adopted by him as a matter of law. That it was the duty of the Court to construe the written contract and to interpret and declare its meaning if the language used was susceptible of only one reasonable signification, there can be no question. That the agreement of the parties is to be ascertained from the plain language employed by them, and that such agreement is to be enforced, no matter what the intention may have been, is equally well settled. 6 R. C. L., 841, § 231. But that

rule is not to be pushed to the length of requiring that by its operation—

"the general intention of the parties, as evidenced by the contract itself, shall be frustrated or perverted, either in whole or in part." "The terms employed are servants, and not masters, of a perspicuous intent; they are to be interpreted so as to subserve, and not to subvert, such intent." 6 R. C. L., 841, Sec. 231. *Chism v. Schipper,* 51 N. J. Law, 1; 16 Atl., 316; 2 L. R. A., 544; 14 Am. St. Rep., 668.

The meaning and purport of the words and phrases used are to be ascertained from an examination of the entire instrument; and to that end all of its terms must pass in review, for one expression may modify, limit, or illuminate the other. The intention of the parties is then to be ascertained by applying the terms so examined and interpreted to the subject matter of the contract. *Keller v. Webb,* 125 Mass., 88; 28 Am. Rep., 209. In the light of these elementary principles, may it be held, as a matter of law, that the terms of the instrument here, applied to the subject matter involved, were reasonably susceptible of but one meaning, viz., that the plaintiff, Breedin, transferred and assigned to the defendants, Smith and Dagnall, the Clinkscales contract, and that, in consideration thereof, Smith and Dagnall assumed all the outstanding contractual liabilities and obligations of Breedin to Clinkscales, including the money payments stipulated, and in addition thereto agreed to pay Breedin the sum of $3,000.00?

Conceding that the subject matter of the agreement between plaintiff and defendants was the Clinkscales contract, and that in contracting for the assignment of that contract the defendants impliedly assumed the burdens thereby imposed upon the plaintiff, Breedin (5 C. J., 976, 977, §§ 168, 169), is or is not the extent to which those burdens are assumed expressly limited by the language of

the contract itself? What Breedin undertakes to do is thus expressed:

I "hereby sell and transfer unto K. P. Smith and A. H. Dagnall all my right, title, and interest to the contract made and entered into between P. E. Clinkscales and myself on the 27th day of January, 1920, to that certain lot situate on South Main Street in the City of Anderson, County and State aforesaid."

In consideration of what? The consideration, not implied but expressed, of what Smith and Dagnall undertake to do, is in this language:

"The said K. P. Smith and A. H. Dagnall are to pay the said C. S. Breedin four thousand, five hundred dollars ($4,500.00) on or by February 26, 1920, one thousand dollars being paid this day, receipt of which is hereby acknowledged. It is understood that the entire consideration that the said K. P. Smith and A. H. Dagnall are to pay for the property is seventeen thousand, five hundred dollars ($17,500.00). The remaining purchase price to be paid on or by January 27, 1921."

Then follow the provisions that of the $4,500 to be paid February 26, 1920, $2,500.00 of said amount was to be paid to Clinkscales and $2,000.00 to Breedin; that the Yancey lease should be assigned to Smith and Dagnall; and the closing sentence: "Balance due to P. E. Clinkscales, January 27, 1921, $12,000.00, due C. S. Breedin, January 27, 1921, $1,000.00." In thus assuming, as the only expressed consideration moving from them to Breedin for the assignment of the Clinkscales contract, the making of the payments of $14,500.00 to Clinkscales and $3,000.00 to the plaintiff, under the principle of *expressio unius exclusio alterius est* it might well be doubted whether the express assumption of these payments of money by Smith and Dagnall did not exclude the implied assumption by them of the obligations imposed by the Clinkscales contract

upon Breedin to pay, in addition to the money specified, interest, taxes, paving assessments, the outstanding claim for the use of the party wall, etc.   But when, to the express stipulations as to these payments of money, is added the definite provision, "It is understood that the entire consideration that the said K. P. Smith and A. H. Dagnall are to pay for the property is seventeen thousand, five hundred ($17,500.00) dollars," we think no room for doubt remains that the contract as a whole is reasonably susceptible of the construction for which defendants contend.   If, as held by the Circuit Court, the word "property" is here used in the sense of the property rights of Breedin under the Clinkscales contract, and does not refer to the lot itself, then the language would clearly be susceptible of the meaning that for the mere assignment of the contract and the placing of Smith and Dagnall in his shoes, Breedin was to receive an entire consideration of $17,500.00.   But, as is plainly disclosed by the express stipulations as to the sums to be paid Breedin, the entire consideration in money payable by Smith and Dagnall to Breedin for his property rights in the contract was the sum of $3,000.00 and not $17,500.00. In providing, therefore, that the "entire consideration" they were "to pay for the property" was $17,500.00, we think the language is clearly susceptible of the construction that the "property" referred to was the lot of land, mentioned in the preceding paragraph as the subject matter of the Clinkscales contract, and the purchase of which was the ultimate object of both contracts.   In buying a contract for the purchase of real estate, just as in buying the real estate itself, it would seem obvious that the controlling consideration from the buyer's standpoint, in determining the extent of the obligations he is willing to assume, is the value to him of the real estate itself. The value of a contract to purchase real estate is largely, if not wholly, dependent upon the value of the land, and

whether one will buy such a contract ordinarily depends solely upon what the real estate itself is finally to cost him as the result of buying the contract for title. Hence, the cost price of the real estate, of the property itself, must necessarily be the ultimate measure to which the buyer of a mere contract for title submits his calculations and by which he determines the extent of the obligations he is willing to assume. When, therefore, in an agreement to buy a contract for title, it is expressly provided that the "entire consideration" the assignees of the title contract "are to pay for the property is seventeen thousand, five hundred dollars," an intent to fix the limit of the assignees' liability under the contract by applying the measure of the entire consideration they are to pay for the real estate itself would seem clearly inferable.

But if it were doubtful whether the language of the contract, considered alone, would support the interpretation for which defendants contended, then it would be the duty of the Court, in conformity to an established canon of construction, to inform itself of the circumstances which surrounded the parties at the time and to consider the preliminary negotiations leading to the execution of the contract, not for the purpose of allowing any variation or contradiction of its terms, but to the end that the language employed be so construed as to give it such effect, and none other, as the parties intended at the time the contract was made. 6 R. C. L., p. 849, § 239, page 839, § 228. When the contract here is read in the light of the circumstances surrounding its execution and of such of the preliminary negotiations as the trial Court permitted to be adduced in evidence, if the matter were open to doubt, we think the doubt is clearly resolved in favor of the view that the contract is readily susceptible of the construction above suggested. It follows that, in holding as a matter of law that the contract was not susceptible of that interpretation, and in directing a verdict against the defendants

upon that theory, the ruling of the Circuit Judge was erroneous; and, to the extent the defendants' exceptions assign error in that regard, they must be sustained.

To the extent, however, that the exceptions predicate the error of the Circuit Judge in thus directing a verdict upon his failure to hold as a matter of law that the contract was susceptible of no other reasonable construction than that for which defendants contended, and upon his failure so to construe and interpret it (exception 4), they must be overruled. We are of the opinion that the contract presents such a case of latent ambiguity as would warrant submission to the jury of the question as to what the parties really intended as a matter of fact. When the ambiguity arises, not upon a consideration of the words of the instrument as viewed in themselves but upon these words when applied to the object described, or where a resort to extrinsic facts will tend to remove the obscurity in meaning of the language employed, the question of interpretation should be submitted to the jury, under proper instructions. 6 R. C. L., 862, § 249. *Wheeler v. Globe & Rutgers Fire Insurance Co. of New York* (S. C.), 118 S. E., 609.

The defendants' second point, that the Circuit Court erred in excluding certain parol testimony offered for the purpose of showing the true meaning and purport of the written contract, under the foregoing view of the pivotal question raised, is well taken, and the exception (12) thereto directed must be sustained.

The third contention that, in the view the meaning and effect of the contract were as construed by the Court, error was committed in excluding parol testimony offered to establish fraud on the part of the plaintiff in procuring the contract, must likewise be sustained. The testimony in question was apparently excluded upon the theory that the falsity of the representations relied upon to establish fraud was disclosed by the Clinkscales contract,

to which reference is made in the contract of assignment, and that, the Clinkscales contract being thereby made a part of the contract of assignment, the defendants were conclusively bound by what it disclosed. But, under the allegations of actionable fraud the excluded testimony was offered to support, whether the defendants knew or under all the circumstances ought to have known the contents of the Clinkscales contract and of the falsity of the alleged representations upon which they acted, was a question of fact for determination by the triors of fact under proper instructions of the Court. It could not, as we think, properly be resolved by the Court against the defendants from the terms of the written instrument alone. See generally, 5 C. J., 939, § 105; 27 R. C. L., 365, 379; 30 Cyc., 1693.

The fourth contention that there was error in directing a verdict when the evidence tended to establish that plaintiff had abandoned the contract with defendants, is untenable. We think the Circuit Judge correctly held that there was no evidence of such abandonment or relinquishment by the plaintiff as would deprive him of a right of action upon his contract.

In view of the foregoing conclusions, such other points as are sought to be raised by the exceptions are not regarded as material and will not be discussed.

## PLAINTIFF'S APPEAL

The plaintiff's three exceptions advance the one proposition that, under the doctrine of subrogation properly applicable to the undisputed facts, he was entitled to the direction of a verdict for the sum of $2,500.00 paid by him to Clinkscales.

Those facts, he says, are that, under the contract of purchase with Clinkscales, the plaintiff was obligated to pay to Clinkscales the sum of $2,500.00 on a certain date, that this contract was then assigned to the defendants, and that on the date of payment the defendants refused to pay that

sum, and the plaintiff being secondarily liable, paid the money to Clinkscales. Under that state of facts he claims to be subrogated to the rights of Clinkscales.

If, as we have held in disposing of the defendants' appeal, the verdict was improperly directed for the plaintiff in any amount, the Circuit Court, of course did not err in refusing to direct a verdict for the $2,500.00 claimed.

We deem it proper to add, however, that in no view of the case would the equitable doctrine of subrogation seem to be applicable. Until the plaintiff established his right to recover against the defendants for a breach of their contract with him, certainly there could be no basis for a claim of subrogation. *Hardin v. Clark,* 32 S. C., 488; 11 S. E., 304. But such a breach would not necessarily give rise to any right of subrogation. In the case at bar, Clinkscales was not a party to the agreement between plaintiff and defendants. It does not appear that he ever assented thereto or in any wise expressly or impliedly accepted the defendants as primary obligors. Conceding that Clinkscales, by virtue of defendants' express promise in the assignment contract, might have had a right of action against defendants (5 C. J., 976, § 169), the actual primary liability to him was that of the plaintiff, Breedin. Subrogation is not allowed in favor of one who pays a debt in performance of his own covenants. 37 Cyc., 374. See *McLure v. Melton,* 34 S. C., 377; 13 S. E., 615; 13 L. R. A., 723; 27 Am. St. Rep., 820. When, therefore, Breedin paid the $2,500.00 to Clinkscales in discharge of a debt for which he was as to Clinkscales primarily liable; the payment was an extinguishment of Clinkscales' right to recover as against any one, and there remained no rights of Clinkscales against the defendants to which the plaintiff could become subrogated. 37 Cyc., 374. The plaintiff's rights, after paying the $2,500.00, were the same as they were before, viz., such rights and remedies as he had for enforcing the liability of the defendants to him under their

contract with him. If he could have acquired any rights from Clinkscales, they would have been no different or higher rights. The exceptions of plaintiff must, therefore, be overruled.

In conformity with the conclusions reached in disposing of both appeals, the judgment of the Circuit Court is reversed, and a new trial ordered. ·

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE COTHRAN disqualified.