## 11536

### CLOWNEY v. RIVERS, STATE WAREHOUSE COMMISSIONER

#### (123 S. E., 759)

1. WAREHOUSEMEN—DELIVERY OF GOODS TO ONE ENTITLED TO POSSESSION JUSTIFIED.—While a warehouseman cannot, for purpose of promoting his own advantage, dispute bailor's title, generally, he is justified in delivering goods to one entitled to possession whether he is bailor or another.

2. CHATTEL MORTGAGES—WHETHER AFTER-ACQUIRED COTTON COVERED BY CROP MORTGAGE HELD FOR JURY.—Whether a mortgage of crops was intended to cover cotton thereafter accruing to mortgagor as rent from crops grown by his tenants *held* for jury.

3. CHATTEL MORTGAGES—WHETHER COTTON RECEIVED FROM TENANTS AS RENT HELD FOR JURY.—Whether cotton in question accrued to mortgagor as rent from crops grown by his tenants after execution of mortgage on crops claimed not to cover rent cotton *held* for jury in action against State Warehouse Commissioner for wrongful delivery to mortgagee.

4. EVIDENCE—WHETHER COTTON WAS RAISED ON DESCRIBED LAND IN CROP MORTGAGE DURING CURRENT YEAR MAY BE ESTABLISHED BY PAROL.—Whether cotton in question was raised during current year on land described in crop mortgage may be established by parol evidence, as descriptions only furnish means of identification.

5. CHATTEL MORTGAGES — MORTGAGE OF AFTER-ACQUIRED PROPERTY IS VALID.—A mortgage of after-acquired property is valid, and lien attaches as soon as property is acquired.

6. CHATTEL MORTGAGES—INTENTION OF PARTIES HELD PRIMARY OBJECT OF CONSTRUCTION.—The primary object in construing a chattel mortgage is to ascertain parties' intention.

7. CHATTEL MORTGAGES—CONSTRUCTION OF FACTS APPARENT ON FACE OF CHATTEL MORTGAGE HELD FOR COURT.—The construction to be given a chattel mortgage, when determined by facts apparent on its face, is a question of law for the Court.

---

Note: On the general rule in relation to the validity of chattel mortgage on after-acquired property, see note in 1 L. R. A. (N. S.), 451.

On validity of sale or mortgage of future and growing crops, see notes in 23 L. R. A., 449; L. R. A. 1917C, 8.

8. CHATTEL MORTGAGES—WHEN CONSTRUCTION MAY BE A QUESTION OF FACT FOR JURY, STATED.—Where meaning of language employed in a chattel mortgage cannot be determined without resort to extrinsic facts, or where ambiguity arises, not upon consideration of the words alone, but when applied to the object described, parties' intention may become a question of fact for jury.

Before SHIPP, J., Fairfield, Spring Term, 1923. Reversed and remanded.

Action by J. Spratt Clowney, Jr., against J. Clifton Rivers, State Warehouse Commissioner of the State of South Carolina. Judgment for plaintiff and defendant appeals.

*Messrs. Samuel M. Wolfe* and *John M. Daniel,* for appellant, cite: *Nonsuit:* 117 S. C., 1. *Mortgage on crops:* 112 S. E., 920; 97 S. W., 440; 11 C. J., 442. *Title to crop:* 123 S. C., 44. *Agency:* Throop on Public Officers, 1892 Ed., 120 S. C., 511; 116 S. C., 467. *Directed verdict:* 119 S. C., 837.

*Messrs. Hemphill & Hemphill* and *J. C. McLure,* for respondents, cite: *Exception too general:* Sec. 6, Rule 5, Sup. Ct.; 16 S. C., 100; 17 S. C., 329; 19 S. C., 60; 20 S. C., 57. *Directed verdict:* 16 S. C., 448. *Nonsuit:* 22 S. C., 560. *Crop mortgage:* 59 S. W., 293; 88 S. C., 373. *Duty of Commissioner:* Code 1922, Vol. 3, Sec. 3, 375.

July 3, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

In a case which appears to have been treated as an action for damages for the conversion of 12 bales of cotton, delivered to a state warehouse for storage, the presiding Judge directed a verdict for the plaintiff. From judgment thereon the defendant appeals.

L. M. Blair was manager of State Warehouse No. 696, at Blairs, in Fairfield County. He was also president of a mercantile establishment at Blairs known as the Blair-Frazier Company. The plaintiff, J. Spratt Clowney, Jr.,

was a farmer in the same section of the county. In the year 1920, he appears to have been the owner of a plantation of 750 acres of land, upon which the Bank of Winnsboro held a mortgage to secure a loan incurred by Clowney for the purpose of paying the purchase price of the land. Upon Clowney's obligation to the bank, the Blair-Frazier Company was an indorser or guarantor. In 1920 Clowney ran a trading account for plantation supplies, fertilizers, etc., with the Blair-Frazier Company. On June 12, 1920, Clowney executed and delivered to the Blair-Frazier Company his note, together with chattel mortgage to secure same, for $2,350, due October 15, 1920. This mortgage, which will hereinafter be more particularly referred to, covered all cotton, etc., grown or raised, or to be grown or raised, during the current year on the mortgagor's plantation of 750 acres. On December 17, 1920, Clowney brought to Blair's 15 bales of cotton and delivered them to L. M. Blair. This cotton, according to plaintiff's contention, was "rent" cotton upon which there was no outstanding lien. Twelve bales of this cotton, as plaintiff claims, were delivered to L. M. Blair, as manager of the State Warehouse, for storage, with instructions to deliver the receipt therefor to the Bank of Winnsboro. According to defendant's contention, these 15 bales were delivered to Blair as President of the Blair-Frazier Company, and that company then undertook as Clowney's creditor and agent to store 12 bales of the cotton in Clowney's name in order to place the warehouse receipt with the Bank of Winnsboro upon Clowney's representation that the bank had a prior mortgage lien on the 12 bales. Thereupon a warehouse receipt dated at Blairs, December 17, 1920, in the name of J. S. Clowney, Jr., was made out and signed by L. M. Blair, manager of local warehouse, and forwarded to Columbia for the signature of the State Warehouse Commissioner. A memorandum showing weights of the cotton was given Clowney, but no warehouse receipt was ever delivered to him. The receipt forwarded

to Columbia was signed by J. Clifton Rivers, State Warehouse Commissioner, and returned to L. M. Blair, as manager of the local warehouse at Blairs. L. M. Blair then, in order to comply, as he claims, with Clowney's instructions to turn the receipt over to the bank, indorsed Clowney's name on the back thereof and personally carried it to the Bank of Winnsboro. In response to inquiry, he was told by the bank that they had no mortgage or prior lien on this cotton. Blair then retained the warehouse receipt, and according to his testimony, about 10 days after his visit to the bank, he saw Clowney and notified him, in substance, that since the bank had no mortgage on this cotton, it was applicable to the mortgage of the Blair-Frazier Company and would have to be so applied. Over the signature of "J. C. Clowney, Jr. (B)," which had apparently been indorsed on the back of the warehouse receipt by L. M. Blair for the purpose of delivery of the receipt to Bank of Winnsboro, was written an assignment to Blair-Frazier Company. The receipt was delivered to the Blair-Frazier Company, and thereafter the cotton was withdrawn from the warehouse and delivered by the defendant to the Blair-Frazier Company. The warehouse receipt, indorsed by the Blair-Frazier Company, was surrendered and canceled.

The exceptions assign error (1) in the direction of the verdict for the plaintiff, and (2) in the refusal of defendant's motion for nonsuit.

The exceptions which assign error in the direction of the verdict will first be considered, and, to the extent deemed necessary, the points thereby raised will be covered in the following discussion. The plaintiff's position, sustained by the trial Court, is that the evidence is open to no other reasonable inference than that 12 bales of the plaintiff's cotton passed into the custody of the defendant as State Warehouse Commissioner; that this cotton was delivered wtihout plaintiff's authority to a third party, the Blair-Frazier Company; and that in delivering the cotton with-

out the consent and authority of the plaintiff the defendant, in any view of the facts, was guilty of a conversion of plaintiff's property for which as warehouseman he is legally liable to respond in damages. Owing to the dual relationship of L. M. Blair as manager of the local warehouse and as President of the Blair-Frazier Company, the facts leading up to and preceding the withdrawal of the cotton from the warehouse present a somewhat confused situation. The evidence is open to conflicting inferences as to whether certain of Blair's acts are attributable to him as manager of the warehouse or as president of the mercantile company. But, in the last analysis, we think the Circuit Judge correctly held that the question of the defendant's liability turns upon whether there was a wrongful delivery of the property in his possession as bailee.

Whether there was a wrongful delivery depends upon whether the person to whom the delivery was made was entitled to the possession of the cotton. While a warehouseman cannot, for the purpose of appropriating goods to his own use, or of otherwise promoting his own advantage, dispute the title of the bailor, as a general rule he is justified in delivering stored goods to one who is entitled to the possession whether such person be the bailor or another. 27 R. C. L., 983 § 40. Where the warehouseman has delivered goods to another than the bailor, he is always entitled to the protection of the title of the person to whom such delivery has been made. The Circuit Judge, in effect, correctly so ruled, but held that inasmuch as it appeared as a matter of law that the chattel mortgage under which the Blair-Frazier Company had claimed and obtained the delivery of the cotton did not in fact cover the cotton stored, the delivery to that company was unlawful and constituted a conversion for which the defendant was liable. The question for determination is thus narrowed to whether, under all the evidence adduced, it conclusively appeared that the chattel mortgage in question did not cover the cotton stored.

The chattel mortgage of June 12, 1920, due October 15, 1920, under which the Blair-Frazier Company claimed and obtained possession of the cotton, contained the following provisions:

"Now, in order to secure the payment of said note, * * * I do hereby grant, bargain and sell unto the said Blair-Frazier Company the following crop and crops and goods and chattels, to wit: First, all the certain cotton, cotton seed, corn, peas, hay, etc., grown or raised, or to be grown or raised during the current year nineteen hundred and 20, upon about 750 acres of cleared land on or upon that certain plantation or tract of land situate in the said County of Fairfield and State aforesaid, now known as my land and containing in all 750 acres, and bounded as follows, to wit: By land of D. P. Coleman, S. T. Clowney and others. * * * The mortgagor hereby expressly declares that it is his intention and purpose that the crop and crops planted and growing and to be planted, grown, raised, made or harvested upon the above-described tract of land is, and shall become and remain, subject to the lien of this mortgage until the same shall have been harvested and applied to the payment of the amount due and owing under and upon this mortgage, and the mortgagor hereby expressly waives any statutory or other defense against the enforcement of the provisions of this mortgage."

The mortgage contains the usual provision conferring authority on mortgagee to take possession of the property after default in payment. It is undisputed that the 12 bales of cotton in controversy were "grown or raised" and were a part of the "crops planted, made or harvested" during the current year of 1920 upon the plantation of the mortgagor described in the mortgage. But plaintiff testified that this particular cotton was not planted, grown, raised, and harvested by him, but by his tenants to whom he had rented a portion of his plantation for a standing rent, and that the cotton was acquired by him under his claim for rent, and

not by virtue of any interest or title in and to his tenants' crops. Accepting at its face value the plaintiff's testimony that this was rent cotton of the character described, the Circuit Court held that the mortgage did not cover the cotton for the reason that the landlord had no right or authority "to mortgage the tenants' crops."

We think the conclusion of the Circuit Court must be held erroneous for two reasons. In the first place, the fact that this was rent cotton of the character described may not be regarded either as undisputed or as established to the exclusion of any other reasonable inference by the evidence. The plaintiff testified that he had on the 750-acre plantation eight renters, three croppers, and a plow and a half for wages. The defendant's witness, Blair, testified that there were not more than "eight plows on his (plaintiff's) place," and that in taking the mortgage for the Blair-Frazier Company he "knew nothing about" renters. The credibility of the plaintiff's testimony to the effect that all of this cotton was "rent cotton" was clearly for the jury.

But, in the second place, even if it be conceded that the cotton was rent cotton, we are of the opinion that it should not have been held as a matter of law that the mortgage did not cover it. It is not contended that the mortgage was void for generality and indefiniteness of the description of the property, nor that the language of the description, *viz.,* "cotton, grown or raised or to be grown or raised" during the current year on the certain tract of land described, was not sufficiently comprehensive to cover cotton grown or raised by tenants of the mortgagor. See *Brown v. Hughes,* 94 S. C., 140; 77 S. E., 730. *Livingston v. Railway Co.,* 100 S. C., 18; 84 S. E., 303. *Kimbrell v. Mills & Young Co.,* 100 S. C., 443; 84 S. E., 996. *People's Bank of Rock Hill v. People's Bank of Anderson,* 122 S. C., 476; 115 S. E., 736.

It will be observed that the mortgage does not specify the person or persons or class of persons by whom the cotton is to be grown, or even limit the descrip-

tion to cotton or other crops "grown by or for" the mortgagor. Since descriptions do not identify of themselves, but only furnish the means of identification *Willey v. Snyder,* 34 Mich. 60), it was entirely competent to establish by parol evidence (5 R. C. L., 429, § 62) that the cotton here in question was grown or raised during the current year on the land designated and described in the mortgage. Those facts appearing from the evidence, the property in controversy clearly came within the descriptive words of the mortgage. If it came within the descriptive words of the mortgage, the only inquiry with which we are concerned in this phase of the case is whether Clowney, the mortgagor, could make this rent cotton, derived from tenants, the subject of a valid chattel mortgage. Even if the validity of the mortgage were determinable by the common-law doctrine as to the character of the property interest which must subsist in the mortgagor at the time of the execution of the mortgage (5 R. C. L., 403, § 27), when the nature of the right in the tenant's crop conferred upon the landlord by our statutes (Section 5692, 5694, Vol. 3, Code 1922) is considered, it might well be doubted whether the view of the Circuit Court, that Clowney had no mortgageable interest in his tenants' crops, could be sustained.

But the efficacy of this mortgage to operate on the property here in question is not dependent upon whether Clowney had legal title to the tenants' crops, or any part thereof, at the time the mortgage was given. As was said by Mr. Justice McIver, speaking for the Court, in *Akers v. Rowan,* 33 S. C., 451, 475; 12 S. E., 165, 173 (10 L. R. A., 705):

"It is settled in this State at least, that a mortgage of after-acquired property is good and valid, unless rendered invalid by some other cause, and that the lien of the mortgage attaches so soon as the property is acquired by the mortgagor (*Parker v. Jacobs,* 14 S. C., 112), and, so far as the present inquiry is concerned, I do not see that it makes any difference

whether such lien is a legal or an equitable lien, for in either aspect it may be enforced by the mortgagee."

In the state of facts here presented there was nothing to prevent the attachment of the lien of the mortgage of the Blair-Frazier Company, upon the "rent" cotton in question as soon as the property was acquired by Clowney, the mortgagor. See *Moore v. Byrum,* 10 S. C., 452; 30 Am. Rep., 58. Hence it would seem clear that the mortgage may not be pronounced invalid in so far as its application to the cotton here involved is concerned, upon the ground that the mortgagor had no right to mortgage the "crops of tenants." If so, it does not conclusively appear that the Blair-Frazier Company, to whom or upon whose order the defendant delivered this cotton, was not entitled to the possession thereof by virtue of the past-due chattel mortgage under which it claimed. See *Reese v. Lyon,* 20 S. C., 17. *Martin v. Jenkins,* 51 S. C., 43; 27 S. E., 947. *Rainwater v. M. & F. Bank,* etc., 108 S. C., 206; 93 S. E., 770. *Dickerson v. Cleland,* 120 S. C., 221; 112 S. E., 920. *Sanders v. Warehouse Co.,* 101 S. C., 381; 85 S. E., 900. It follows that if the Blair-Frazier Company was entitled to possession there was no wrongful delivery by defendant, and the verdict was improperly directed for the planitiff.

But appellant's contention that the Circuit Judge 6-8 erred in not granting defendant's motion for nonsuit upon the ground, substantially, that it conclusively appeared from the evidence that this cotton was covered by the Blair-Frazier Company's mortgage, and that title to the property was thereby vested in said company, cannot be sustained. As in the construction of other contracts, the primary ·object in construing a chattel mortgage is to ascertain the intention of the parties (11 C. J., 492, § 155), and there can be no doubt that the construction to be given a chattel mortgage is, when determined by facts apparent upon its face, a question of law for the Court (11 C. J., 508, § 185). But where the meaning of the language em-

ployed in the instrument cannot be determined without resort to extrinsic facts, or where ambiguity arises, not upon a consideration of the words of the contract as viewed in themselves, but upon a consideration of these words when applied to the object described, the intention of the parties may become a question of fact, which should be submitted to the jury under appropriate instructions. *Breedin v. Smith* (S. C.), 120 S. E., 64. *Wheeler v. Globe,* etc., Ins. Co., 125 S. C., 320; 118 S. E., 609; 6 R. C. L., 862, § 249. While the description of the property incorporated in this mortgage is sufficiently comprehensive as well as sufficiently definite to cover the cotton in controversy, we do not think the language of the instrument itself so clearly indicates an intention of the parties to cover the rent cotton to be thereafter acquired by the mortgagor as to require that construction and interpretation as a matter of law. If so, whether it was the intention of the parties to the contract to cover cotton accruing to the mortgagor as rent from the crops grown by his tenants becomes a question of fact to be determined from a consideration of the language of the instrument as a whole, in connection with the circumstances under which it was given, the subject matter, the relation of the parties, and the object of the agreement. *Furgerson v. Twisdale,* 137 N. C., 414; 49 S. E., 914. Where the pertinent evidential facts bearing upon this question of intention are disputed, or where the relevant facts conclusively established are reasonably susceptible of more than one inference, the question of intention should be submitted to the jury under appropriate instructions. See *Breedin v. Smith, supra; Wheeler v. Globe Ins. Co.; supra.* It cannot be held that the facts pertinent to the determination of that issue, adduced in evidence on the trial, were either undisputed or susceptible of only one inference. The nonsuit was therefore properly refused.

The judgment is reversed, and a new trial ordered.

Reversed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.
MR. CHIEF JUSTICE GARY did not participate.